HEID v AAASULEWSKI (AFTER REMAND)

Docket No. 177684. Submitted January 18, 1995, at Detroit. Decided
April 3, 1995, at 10:00 A.M.

Katherine E. Heid was granted a judgment of divorce from
Michael E. AAASulewski in the Wayne Circuit Court. The
parties were awarded joint legal custody of their minor son and
the plaintiff was awarded sole physical custody. Thereafter, in
response to allegations of physical abuse of the child, the court
granted temporary physical custody to the defendant and visi-
tation rights to the plaintiff. A friend of the court referee then
recommended that the parties be awarded joint legal and
physical custody. The defendant sought review de novo. The
court, Paul S. Teranes, J., affirmed the referee's findings and
ordered that the parties receive joint legal and physical cus-
tody. The court did not make a finding whether an established
custodial environment existed and found the statutory best
interest factors did not significantly favor either party. The
defendant appealed and the Court of Appeals, HOOD, P.J., and
MURPHY and FITZGERALD, JJ., in an unpublished memorandum
opinion, decided February 16, 1994 (Docket No. 162946), re-
manded the case to the trial court for a determination whether
an established custodial environment had been created with
the defendant. On remand, the court found that an established
custodial environment had been created with the defendant.
Nonetheless, the court held that the plaintiff had met her
burden of proof by clear and convincing evidence that the
child's best interests warranted the change to joint physical
custody. The defendant appealed.

After remand, the Court of Appeals *held:*

A finding of equality or near equality regarding the best
interest factors set out in MCL 722.23; MSA 25.312(3) does not
necessarily prevent a party from satisfying the burden of proof
by clear and convincing evidence with regard to a motion to
modify child custody. Mathematical equality with regard to the
statutory factors does not necessarily amount to an evidentiary

REFERENCES

Am Jur 2d, Divorce and Separation §§ 974, 1010.
See ALR Index under Custody and Support of Children.

standoff that precludes a party from satisfying the clear and convincing standard of proof. In this case, the plaintiff met her burden of proof by clear and convincing evidence and the trial court did not commit clear legal error or a palpable abuse of discretion.

Affirmed.

DIVORCE — CHILD CUSTODY — BEST INTERESTS OF CHILD — BURDEN OF PROOF.

A finding of equality or near equality regarding the statutory best interests of the child factors does not prevent a party seeking to modify a custody award from satisfying the party's burden of proof by clear and convincing evidence (MCL 722.23, 722.27[1][c]; MSA 25.312[3], 25.312[7][1][c]).

*Paul T. Jansen,* for the plaintiff.

*Gerald M. Soborowski,* for the defendant.

AFTER REMAND

Before: CORRIGAN, P.J., and O'CONNELL and G. S. ALLEN, JR.,* JJ.

CORRIGAN, P.J. In this child custody case, defendant appeals as of right the circuit court's June 1994 opinion on remand, clarifying its March 1993 order changing physical custody of the parties' minor son, Eugene, from defendant father to joint physical custody in both parties. This Court, in an unpublished memorandum opinion, decided February 16, 1994 (Docket No. 162946), had directed the circuit court to determine whether an established custodial environment had been created in defendant father. On remand, the court found an established custodial environment with defendant father and found the parties nearly equal on the standardized criteria of MCL 722.23; MSA 25.312(3). Nonetheless, it held that plaintiff had

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

met her burden of proof by clear and convincing evidence that Eugene's best interests warranted the change in custody to joint physical custody. The true impact of the order was to increase the child's visitation with defendant mother by thirty-six hours in each two-week period.

Having reviewed the entire record, we affirm.

### I. FACTS AND PROCEEDINGS

Plaintiff and defendant were married in 1987. Their only child, Eugene, was born on February 25, 1988. The parties lived together until May 1989. A default judgment of divorce was entered on December 28, 1989, awarding joint legal custody to the parties and sole physical custody to plaintiff mother.

Six months later, on June 1, 1990, defendant father filed an emergency petition to change custody, alleging that Eugene was in danger of serious physical harm as a result of several alleged incidents of physical abuse that occurred while Eugene was in the custody of plaintiff mother or her boyfriend. Pending an investigation by the Family Counselling Service, the circuit court granted temporary physical custody to defendant father and allowed visitation with plaintiff mother on alternate Wednesdays through Fridays under the maternal grandmother's supervision. At about the same time, plaintiff mother sought to regain custody, alleging that Eugene had suffered a black eye while in the temporary physical custody of defendant father.

Subsequent investigation revealed that several independent reports of suspected child abuse had been made in early 1990. Eugene had suffered a broken leg and various bruises on his body. The

mother's live-in boyfriend was suspected. However, no charges were pressed against plaintiff mother or her boyfriend.

In September 1990, plaintiff moved to Arizona where she resided with her boyfriend until April 1991, during which time plaintiff mother did not visit the child. Plaintiff then apparently severed her relationship with her boyfriend.

In May 1991, plaintiff returned to Michigan and the circuit court ordered defendant to continue temporary physical custody and also ordered psychiatric evaluations and parenting classes.

Hawthorn Center staff interviewed the parties and their son. After a lengthy delay, the Hawthorn Center reported on November 15, 1991. The report noted that the original referral had occurred fourteen months earlier and that the issue of physical abuse or the mother's residence were no longer of great concern. Neither parent had any concern about, much less evidence of, physical abuse and plaintiff mother had no plans to move from Michigan. The report noted defendant father's establishment of a primary residence and his fitness as a father. The report also noted, in part:

> Ms. Katherine Heid has expressed her willingness to provide more direct physical needs for Eugene. Her demonstration of love, affection and emotional support of Eugene is evident in his strong attachment to her. Though she may be capable of providing materially for Eugene, she will need financial assistance to do so. Her moral fitness, physical and emotional health are all without problems. . . .
>
> \*　\*　\*
>
> With regards to physical custody, we view Mr. AAASulewski as a primary choice for being awarded permanent physical custody by virtue of

his record, demonstrated these past 16 months, of providing stability and consistency for Gene which has facilitated a foundation for growth for this child. The child has flourished and would benefit from maintaining this environment.

It is clear, however that Gene is strongly tied to his mother and being of a tender age would naturally benefit from quality contact with her. We would present to the court a request for extending the mother's visits with Gene by increasing the total consecutive days he visits every other week from Friday to Monday to possibly Tuesday.

Defendant father then moved to adopt the recommendation of the Hawthorn Center. On February 5, 1992, the court referred the case to the friend of the court, referee division, for an evidentiary hearing. The referee conducted an evidentiary hearing at which the Hawthorn Center staff psychiatrist and the protective services worker both testified. On April 27, 1992, the referee rejected the Hawthorn Center's ultimate recommendation to award physical custody solely to the father. Instead, he recommended joint legal and joint physical custody.

The referee could not conclude that Eugene's bruises had been inflicted by an adult, or even represented negligence by the parties. (The Department of Social Services had noted that Eugene suffered a black eye while in his father's custody.) He found that plaintiff mother's culpability was speculative and that her relationship with the boyfriend had been severed for some time. The referee also concluded that the mother's absence from the state for seven months had not allowed the development of an established custodial environment in defendant. Accordingly, the referee recommended shared physical custody.

Defendant father then sought review de novo.

The court, upon the agreement of the parties, reviewed the transcripts and exhibits and affirmed the referee's findings. However, the court made no finding whether an established custodial environment existed, nor did it state the burden of proof it had applied. In analyzing the best interest factors pursuant to MCL 722.23; MSA 25.312(3), the court found the parties equal on statutory factors a, b, e, f, and g. The court apparently found the parties equal on factor j, although it noted that defendant father had demonstrated his awareness of the importance of maintaining the relationship with plaintiff mother. The court found factors c and d favored defendant father and that the remaining factors were inapplicable.

The circuit court also found that the suspected child abuse that had led to the temporary placement of the child with the father was no longer an operative factor. Two and one-half years had elapsed since the allegations of abuse; no charges had been filed, and reasonable explanations existed for Eugene's broken leg and bruises. Finding that the statutory factors did not significantly favor either party, the court ordered joint legal and joint physical custody in both parents.

Defendant father appealed and this Court ordered a remand. On remand, the circuit court found, in July 1994, that an established custodial environment existed with defendant father because he had physical custody of Eugene from June 1990 through 1993. However, the court also found that plaintiff mother had met her burden of proof by clear and convincing evidence to justify the change to joint physical custody:

This court further finds that the Plaintiff, Katherine Heid, has borne her burden of proof by clear and convincing evidence to justify the change in

the physical custody from Michael Aaasulewski alone to joint physical custody of the child to both Michael Aaasulewski and Katherine Heid. This finding is based upon the Court being convinced that Katherine Heid is capable of giving love and care to the child and that the good of the child would be better served if both parents had the realization that they were both the legal and physical custodians of the child. As set forth in its original Opinion, the Court found that the factors to be considered when determining physical custody were almost equal as to both the Plaintiff-mother and Defendant-father. Since both parties are able to provide for and give love to the child and be a proper custodial parent, it is in the best interest of the child to have both parents be joint legal and physical physical [sic] custodians of the minor child.

## II. IMPACT OF PARENTAL EQUALITY ON THE STATUTORY FACTORS ON THE BURDEN OF PROOF

We hold today that a finding of equality or near equality on the factors set out in MCL 722.23; MSA 25.312(3) will not necessarily prevent a party from satisfying the burden of proof by clear and convincing evidence on a motion to modify custody. MCL 722.27(1)(c); MSA 25.312(7)(1)(c) provides in part:

The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.

This statute is intended to erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and

disruptive changes of custody orders. *Baker v Baker,* 411 Mich 567; 309 NW2d 532 (1981). Cognizant of our duty and this exacting standard of review, we are nonetheless unwilling to continue to subscribe to the apparent holding of *Arndt v Kasem,* 135 Mich App 252; 353 NW2d 497 (1984), which provides that a court should not order a change in child custody where the parties are equal or nearly equal on the statutory best interest factors. We do not quarrel with the proposition that where an evidentiary standoff exists, a party cannot meet the burden of proof by clear and convincing evidence. However, we are unwilling to conclude that mathematical equality on the statutory factors *necessarily* amounts to an evidentiary standoff that precludes a party from satisfying the clear and convincing standard of proof. In this case, plaintiff met her burden. We cannot conclude that the circuit court committed clear legal error. The process of reviewing these wrenching decisions is not, at bottom, a problem of quantitative analysis; our duty is finally to analyze the quality of the evidence adduced to determine whether a party's burden of proof is met.

The trial court specifically found that the parties were equal on the factors cited above. Given the Hawthorn Center report, we cannot say that any of its findings were against the great weight of the evidence. *Fletcher v Fletcher,* 447 Mich 871; 526 NW2d 889 (1994).

The court ultimately found that Eugene's best interest warranted joint physical custody. We cannot say, on this record, that this finding constituted a palpable abuse of discretion or clear legal error. It is eminently reasonable and just to hold, on this record, that this child's best interest is significantly advanced by having two parents who

are at all times responsible for and actively involved in his care.

MCL 722.28; MSA 25.312(8) directs us to affirm all custody orders and judgments unless the trial court made findings of fact against the great weight of the evidence, committed a palpable abuse of discretion, or made a clear legal error on a major issue.

The whole report of the Hawthorn Center illuminates the excellent relationship that both parties enjoyed with their son. The description of Eugene's development is glowing. Both parties relate beautifully to this child. He is very attached to his mother: the mother's "demonstration of love, affection and emotional support of Eugene is evident in his strong attachment to her." She "demonstrates sincere interested [sic] in Gene's welfare."

The record reflects that very strong emotional ties existed between plaintiff and Eugene, that Eugene was very attached to his mother, and that the parties had cooperated in these difficult circumstances with regard to child-rearing issues. Together, the parties had succeeded in providing a stable, secure, and happy environment for this delightful little boy. On a qualitative review of the evidence adduced, we are satisfied that plaintiff carried her burden of proof by clear and convincing evidence.

In any custody dispute, our overriding concern and the overwhelmingly predominant factor is the welfare of the child. *Harper v Harper,* 199 Mich App 409, 417; 502 NW2d 731 (1993). Indeed, MCL 722.25; MSA 25.312(5) directs that in a custody dispute between parents, the best interest of the child shall control. Our Supreme Court observed long ago, in *Weiss v Weiss,* 174 Mich 431, 436; 140 NW 587 (1913):

> The fact that the parents are equally good, or equally bad, or even that one in some respects may be better than the other, is not necessarily the final test. Other considerations bearing on the welfare of the child may turn the scale.

We disapprove the rigid application of a mathematical formulation that equality or near equality on the statutory factors prevents a party from satisfying a clear and convincing evidence standard of proof. We are duty-bound to examine all the criteria in the ultimate light of the child's best interests. Given the quality of the evidence before the circuit court, we affirm its wise judgment that Eugene can only benefit by both his parents' shared physical custody. We are especially mindful that almost two years have elapsed since the joint physical custody order was entered. We see no legal reason to subject Eugene to any further disruption in his young life.

The circuit court's ruling does not display the defiance of reason, but the essence of wisdom and sound judgment.

Affirmed.