*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW JAMES KRIEG,

       Plaintiff-Appellee,

v

KATHERINE ANN KRIEG, also known as
KATHERINE ANN BALEJA,

       Defendant-Appellant.

UNPUBLISHED
February 11, 2021

No. 350466
Gratiot Circuit Court
Family Division
LC No. 16-003404-DM

Before: BOONSTRA, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

Defendant, Katherine Ann Krieg, also known as Katherine Ann Baleja, appeals by delayed leave granted an order changing the number of "overnights" that each party would spend with their minor child. A referee presided over a lengthy hearing to change the parenting-time schedule for the minor child, and the court adopted the referee's recommendation to substantially increase the parenting time granted to plaintiff. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

As explained by this Court in an opinion in a previous appeal, the parties were married in July 2014, and plaintiff began an extramarital affair in October 2015. In December 2015, defendant told plaintiff that she was pregnant. Plaintiff "reacted poorly to this news." Defendant moved out of the home the parties shared in Alma, returning to Saginaw. In February 2016, plaintiff filed for divorce. *Krieg v Krieg*, unpublished per curiam opinion of the Court of Appeals, issued June 7, 2018 (Docket No. 341055).

The parties' minor child was born in August 2016. Plaintiff initially visited his minor child at defendant's home a few times a week. In September 2016, the court entered a temporary order granting plaintiff three four-hour parenting visits with his minor child each week. Plaintiff exercised most of his parenting time at his grandparents' home in Bay City. In February 2017, his parenting time was increased to eight-hour visits, and he began bringing his minor child to his home in Alma.

Plaintiff sought equal parenting time, and defendant sought primary physical custody. Acting on plaintiff's request, Dr. Tracy Allan performed a custody evaluation. She found that plaintiff had "solid" parenting skills and defendant had "exceptional" parenting skills. Dr. Allan recommended that the parties share equal parenting time and that it be achieved gradually. Her transition time to plaintiff's increase in parenting time was faster than that recommended by an infant mental health specialist who was also involved in the matter. Defendant agreed to a gradual increase in plaintiff's parenting time.

In June 2017, the trial court issued its decision regarding custody and parenting time. It found that an established custodial environment existed only with defendant, and it determined that plaintiff's request for equal parenting time would change the custodial environment. The trial court reviewed the best-interest factors, finding that four weighed in defendant's favor and the remainder favored neither party over the other. It ultimately awarded primary physical custody to defendant, and it awarded plaintiff one overnight parenting-time visit and one midweek parenting-time visit each week. That judgment further states:

> On or after August 1, 2018, Plaintiff shall be allowed to petition this Court to review the parenting time and for consideration of more overnight and extended parenting time. It shall not be a requirement for this review that Plaintiff show that there has occurred a change in circumstances or proper cause pursuant to MCL 722.27.

Plaintiff filed an appeal from the judgment of divorce. He challenged the court's parenting time award, arguing that his parenting time should have increased gradually to equal parenting time in accordance with the experts' recommendations. He also argued that the court erred in its finding regarding the existence of an established custodial environment with only defendant and in its weighing of the best-interest factors. Finally, he challenged certain conditions placed on his parenting time.[1] This Court rejected plaintiff's arguments and affirmed the trial court's custody and parenting time determinations.

Pertinent to this appeal, on August 1, 2018, plaintiff moved to modify parenting time. In his motion, he emphasized that he had exercised all of his parenting time and that one of the concerns expressed by the trial court previously pertained to his relationship with Rachel Young, the woman with whom he had an extramarital affair. Now plaintiff asserted, that relationship with Young was stable, consistent and permanent. Plaintiff explained that he and Young were in a committed relationship and were the parents of a girl born in March 2018. Finally, plaintiff asserted that an increase in his parenting time would serve the minor child's best interests. Plaintiff requested parenting time from 10 a.m. on Sundays until 4 p.m. on Mondays, and 10 a.m. on Wednesdays until 4 p.m. on Fridays.

In her response to plaintiff's motion, defendant argued that, based on the amount of additional parenting time plaintiff was seeking, his request for an increase in parenting time was

---

[1] The judgment of divorce required plaintiff to exercise his mid-week visit in the Saginaw area, where defendant lived. It also precluded plaintiff—who holds a concealed weapons permit—from possessing a handgun while transporting the minor child or being in the minor child's presence.

actually a request for a change in custody and should be treated as such. She argued that plaintiff was seeking to relitigate custody. Defendant asserted that, pursuant to *Vodvarka v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003), plaintiff should be required to establish a significant change in circumstances or other proper cause to support his request. Although she agreed that plaintiff should have regular and frequent parenting time, defendant requested that custody remain with her.

A referee conducted a hearing on plaintiff's motion over the course of 7 days, and she placed her findings on the record at the March 4, 2019 hearing. First, the referee found there existed an established custodial environment with both parents and found that plaintiff's requested increase in parenting time would not change the established custodial environment. She declared that the burden of proof is a preponderance of the evidence.

The referee then considered the parenting-time factors set forth in MCL 722.27a(7), finding that the majority of the factors posed no issues. The referee noted the lack of any issues with respect to the exercise of parenting time. The parties had complied with the parenting-time order. She expressed her belief that this factor weighed in favor of granting parenting time.

The referee next considered the best-interest factors of MCL 722.23 in order to determine parenting time in the minor child's best interests, determining that the only factor not equal was factor (j), the parties' willingness and ability to facilitate and encourage a relationship between the child and the other parent. On this factor, the referee found that it favored plaintiff. Explaining her finding, the referee noted that defendant had expressed her discomfort with an expansion of plaintiff's parenting time and her belief that an increase in plaintiff's parenting time would not be in the minor child's best interest. The referee further noted defendant's inability to identify anything positive about plaintiff's parenting and defendant's demeanor at the hearing.[2] The referee also noted defendant's admissions of negative conclusions regarding plaintiff.

The referee also mentioned a food journal. She explained that defendant had repeatedly raised concerns regarding the minor child's diet, claiming that plaintiff fed him inappropriate foods that caused constipation. When plaintiff suggested keeping a food journal, defendant rejected the idea. The referee found this to be an indication of defendant's unwillingness to facilitate a relationship.

Another issue was defendant's opinion that it was not age-appropriate for the minor child to Face Time plaintiff. Defendant claimed that the minor child would not listen during phone conversations. However, the referee noted testimony from defendant's mother that she speaks to the minor child on the phone every day. The referee saw defendant's position regarding the minor child Face-Timing plaintiff as an indication of her unwillingness to facilitate a close and continuing relationship with plaintiff.

The referee also referred to defendant's position regarding telling the minor child about plaintiff's affair. She understood defendant's position to be that when the minor child is old

---

[2] The referee found defendant's laughter during her responses to certain questions as indicative of her belief that those questions were inappropriate.

enough to ask, he should be told what happened. The referee indicated that this impacted her decision regarding factor (j) to find in favor of plaintiff.

As to other relevant factors, factor (l), the referee noted that plaintiff and Rachel had a young baby and were expecting a second child. She found it important that the minor child spend time with them so as to form relationships with them.

The referee determined that plaintiff had demonstrated a basis for an increase in parenting time and granted his motion, making the following recommendation as to parenting time for plaintiff:

- Beginning Friday March 8, 2019: Alternate weekends from 10 a.m. Friday until 4 p.m. Sunday,

- Beginning March 13, 2019: Alternate Wednesdays from 10 a.m. until 10 a.m. Friday

- Beginning Sunday, March 17, 2019: Alternate Sundays from 4 p.m. until 10 a.m. Tuesday

Defendant filed an objection to the referee's recommendation and the trial court heard the arguments of the parties. After conclusion of the arguments, the trial court noted that in its entry of the judgment of divorce, it anticipated an increase in plaintiff's parenting time. For this reason, the judgment indicated that plaintiff would not be required to make a showing of proper cause or a change in circumstances to support his request for additional parenting time. The trial court noted that this Court referenced this ruling in its opinion and that defendant did not appeal or oppose that ruling. Further, the trial court disagreed with defendant's position that the increase in parenting time constituted a change in custody, explaining that even if defendant's position were true, a sufficient basis for the referee's recommendation to increase parenting time existed based on the single factor that the referee found favored plaintiff. Based on the record and the referee's findings and legal conclusions, the court dismissed defendant's objection to the recommendation and entered an order denying defendant's objection to the referee's recommendation regarding custody/parenting time. Defendant then filed a delayed application for appeal which this Court granted.

## II. ANALYSIS

Defendant argues that the increase in parenting time amounted to a change of custody—as opposed to merely a change in parenting time—and that the referee and lower court erred by failing to apply the correct standards applicable to such a change. She also argues that the evidence plaintiff presented at the hearing before the referee was inadequate to satisfy the applicable standards.

As stated in *Vodvarka v Grasmeyer*, 259 Mich App at 507-508:

> We apply three standards of review in custody cases. The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each

-4-

custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law. [Quotation marks and citations omitted.]

In general, a modification to a parenting-time or custody order may be initiated only if the party seeking the modification shows that it is justified by proper cause or a change of circumstances. MCL 722.27(1)(c); *Marik v Marik (On Remand)*, 325 Mich App 353, 367; 925 NW2d 885 (2018); *Vodvarka*, 259 Mich App at 512-513. This requirement serves as a type of "threshold" for commencing the proceedings. See *Corporan v Henton*, 282 Mich App 599, 609; 766 NW2d 903 (2009). However, caselaw indicates that the phrase "proper cause or . . . change of circumstances," see MCL 722.27(1)(c), means something different depending on whether the modification in question amounts to a change in custody or "merely" a change in parenting time.

In the context of a change of *custody*, "proper cause" can be established by a preponderance of the evidence of an appropriate ground that is "relevant to at least one of the twelve statutory best-interest factors[, MCL 722.23(a)-(*l*),] and [is] . . . of such magnitude to have a significant effect on the child's well-being." *Id*. at 512. To establish a change of circumstances sufficient to initiate the modification of custody, the moving party "must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Id*. at 513. "[T]he evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child." *Id*. at 513-514. "This too will be a determination made on the basis of the facts of each case, with the relevance of the facts presented being gauged by the statutory best interest factors." *Id*. at 514.

These *Vodvarka* standards apply where a requested modification of parenting time will result in a change in the child's established custodial environment. *Marik*, 325 Mich App at 367; *Shade v Wright*, 291 Mich App 17, 27; 805 NW2d 1 (2010). MCL 722.27(1)(c) explains that "[t]he custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort."

Different standards apply to requests for modification of parenting time. *Id*. at 25, 27-28. Such requests are subject to "a lesser, more flexible, understanding of 'proper cause' or 'change in circumstances' " than those articulated in *Vodvarka*. *Marik*, 325 Mich App at 367-368 (quotation marks and citation omitted). The less-stringent standards apply if "the request involves a change to the duration or frequency of parenting time[.]" *Kaeb v Kaeb*, 309 Mich App 556, 570; 873 NW2d 319 (2015). The *Shade* Court stated that "the very normal life change factors that *Vodvarka* finds insufficient to justify a change in custodial environment are precisely the types of considerations that trial courts should take into account in making determinations regarding modification of parenting time." *Shade*, 291 Mich App at 30.

The distinction rests on the differences regarding the focus of custody and parenting time. "[T]he primary concern in child custody determinations is the stability of the child's environment

-5-

and avoidance of unwarranted and disruptive custody changes, [and] the focus of parenting time is to foster a strong relationship between the child and the child's parents." *Id*. at 28-29.

After the existence of proper cause or a change of circumstances for a change of custody or parenting time has been established, the parent seeking the change, to be successful, must show that the change is in the child's best interests. MCL 722.27(1)(c). If the modification would change the child's established custodial environment, the burden is on the moving parent to show by clear and convincing evidence that the modification is in the child's best interests. MCL 722.27(1)(c); *Shade*, 291 Mich App at 23. If the proposed modification would not change the custodial environment, the parent seeking that modification must "establish, by a preponderance of the evidence, that the change is in the child's best interests." *Id*.

Accordingly, we must initially determine whether a change in custody or "merely" a change in parenting time occurred in the present case, both to evaluate the issue of the "threshold" for initiating a change in the child's care and also to evaluate the applicable standard of proof in relation to the best-interests factors.

Defendant contends that the increase in plaintiff's parenting time from 52 overnights with the minor child in a year to 163 in a year amounted to a change of custody. In support of her position, defendant relies on *Lieberman v Orr*, 319 Mich App 68; 900 NW2d 130 (2017). The *Lieberman* Court explained that if a proposed parenting-time change "alters the established custodial environment, the proposal is essentially a change in custody, and *Vodvarka* governs." *Id*. at 84. In *Lieberman*, the defendant mother had primary physical custody of the parties' two children, and the parties had joint legal custody. *Id*. at 73. The parties had stipulated to a parenting-time schedule that gave plaintiff 140 overnights a year and defendant 225 overnights a year. *Id*. at 72. The plaintiff filed a motion to modify parenting time and change the children's schools. *Id*. at 74. He requested "essentially that the parties swap the current parenting time schedule." *Id*. (quotation marks omitted). Advocating in favor of application of the lesser standards set forth in *Shade*, the plaintiff argued that the parties had joint physical custody, that the swap would not materially change the amount of time the children spent in each home, and that "both parents would continue to share in providing love, support, and guidance of the minor children[.]" *Id*. at 75 (quotation marks omitted).

The defendant disagreed with the plaintiff's position that the parties had joint physical custody and disagreed with his position that the proposed change in parenting time would not materially change the amount of time the children would spend in each parent's household. *Id*. She argued that the plaintiff's proposed modifications would change the established custodial environment and that his request was actually a motion to change custody, "notwithstanding its label[.]" *Id*. The defendant argued that the *Vodvarka* standards applied to the plaintiff's request and that he had not shown proper cause or a change of circumstances as discussed in *Vodvarka*. *Id*. at 76.

The trial court agreed with the plaintiff's arguments. *Id*. It analyzed the best-interests factors of MCL 722.23 under the preponderance-of-the-evidence standard. *Id*. It granted the plaintiff's motion, ultimately awarding plaintiff 225 overnights a year and defendant 140 overnights a year. *Id*. This was an 85-night increase in the plaintiff's parenting time. *Id*.

-6-

This Court considered whether the trial court applied the proper standards to the plaintiff's motion, and it found that, despite the label the plaintiff had given to his motion, his "proposed modifications to parenting time effectively changed physical custody of the children from defendant to plaintiff." *Id*. at 85. It explained:

> The parties' judgment of divorce awarded legal custody to both parents, but physical custody of the children to defendant; the judgment did not award the parties joint physical custody. As noted, an award of physical custody primarily or solely to one party typically entails a situation in which the children receive physical care and supervision primarily from the parent awarded that status. That is the case here. In accordance with the parties' agreement that defendant would be the children's primary physical custodian, the children in the case at bar have resided with and been cared for and supervised primarily by defendant since entry of the judgment of divorce. Thus, it defies the plain meaning of the word "primary," as well as rudimentary mathematics, to say that reducing the primary custodian's overnights with the children from 225, or nearly 62% of the calendar year, to 140, or approximately 38% of the calendar year, does not change primary physical custody. By proposing a reduction in the number of overnights the children spend with defendant to a distinct minority of the year, plaintiff was proposing a change in custody, regardless of the label he gave his motion. Accordingly, the proper legal standard under which to review his motion was the more burdensome and restrictive standard set forth in *Vodvarka*. . . .

> Even if we were to accept plaintiff's characterization of his motion as one simply to modify parenting time and change schools, we nevertheless would hold that the trial court committed error requiring reversal by finding, against the great weight of the evidence, that plaintiff's proposed change would not affect the established custodial environment the children share with defendant and by not analyzing the motion under the applicable legal framework set forth in *Vodvarka*. [*Lieberman*, 319 Mich App at 85-86 (footnotes omitted).]

The *Lieberman* Court stated that while "minor modifications that leave a party's parenting time essentially intact do not change a child's established custodial environment, significant changes do." *Id*. at 89-90 (citation omitted). Examples provided by the *Lieberman* Court of such significant changes include a substantial reduction in the amount of time a parent was to spend with a child, see *Rains v Rains*, 301 Mich App 313, 323-324; 836 NW2d 709 (2013), a modification that changed a parent equally active in a child's life to a "weekend parent," see *Powery v Wells*, 278 Mich App 526, 528; 752 NW2d 47 (2008), and a change from year-round near equality of parenting time to one parent having parenting time during the school year and the other having parenting time during the summer, see *Brown v Loveman*, 260 Mich App 576, 596; 680 NW2d 432 (2004). *Lieberman*, 319 Mich App at 90.

The schedule reached in the present case provided for an increase in plaintiff's parenting time by 111 overnights and a corresponding decrease in defendant's parenting time. Plaintiff's parenting time increased from 52 to 163 overnights, and defendant's parenting time decreased from 313 to 202 overnights. This change was even greater than that at issue in *Lieberman*, wherein a change of 85 nights occurred. *Id*. In *Lieberman*, the plaintiff argued "that the 10 weeks of

parenting time during summer vacation that his proposal allows defendant 'has the effect [of] preserving and promoting the custodial environment that the children have with [defendant].' " *Id*. at 91 (brackets in original). This Court replied that "plaintiff's emphasis on the long stretch of summer parenting time defendant would have with the children does not offset the fact that defendant loses more than 12 weeks of parenting time under plaintiff's proposal." *Id*. In the present case, defendant went from having "primary physical custody," to having 111 fewer overnights. Plaintiff went from having only *one* overnight each week to having much more time with the minor child, and *Lieberman* directs that a change of custody did occur in the present case.

Hence, it was error for the referee to conclude that a change of custody did not occur in connection with the new parenting schedule. Defendant contends that a reversal and remand for the application of the *Vodvarka* standards and the clear-and-convincing-evidence standard of proof is required. However, we turn to the trial court's ruling to determine whether the trial court rectified this error. Concluding that it did, we discern no need for remand.

Initially, we note, for the reasons previously stated in this opinion, the trial court also erred by initially finding that the increase in parenting time did not constitute a change in custody. *Lieberman*, 319 Mich App at 91. However, and crucially, the trial court, following making this finding, then stated that even if the schedule change did amount to a change in custody, "father has demonstrated that by the weighing of [best-interests factor (j)] . . . there is a sufficient basis for the referee to have concluded as she did . . . in terms of findings of fact, but also conclusions of law to justify the . . . change in the . . . parenting schedule." The trial court specifically referred to the *Vodvarka* "threshold" standards. In addition, defendant had argued, in her objection to the referee's recommendation, that the clear-and-convincing-evidence burden of proof applied with regard to the evaluation of the best-interests factors and argued that the factors did not justify a change in custody. The trial court stated that it had reviewed the transcripts and that there was not "**any** basis for the [c]ourt to take any other action other than to adopt and affirm [the referee's] findings of fact and conclusions of law." (emphasis added).

Viewing these actions together, it is apparent that the trial court concluded that the evidence was sufficient to effect a change of custody using the *Vodvarka* threshold standards and the clear-and-convincing-evidence standard of proof. The trial court found that the *Vodvarka* "threshold" standards had been met even if the change in schedule amounted to a change in custody.[3] Because the trial court found that application of the *Vodvarka* threshold standards and the clear-and-

---

[3] Plaintiff relies in part on the language in the judgment of divorce in arguing that the *Vodvarka* threshold standards did not need to be reached in the present case. However, the judgment stated:

> On or after August 1, 2018, Plaintiff shall be allowed to petition this [c]ourt *to review the parenting time and for consideration of more overnight and extended parenting time*. It shall not be a requirement for this review that Plaintiff show that there has occurred a change in circumstances or proper cause pursuant to MCL 722.27. [Emphasis added.]

The judgment did not speak to a *change in custody*.

convincing-evidence standard of proof would not change its conclusions, the trial court essentially rectified its initial error and that of the referee. Hence, there exists no basis on which this Court would order a remand.

Next, contrary to defendant's arguments, the trial court's explicit conclusion that proper cause or a change in circumstances occurred under *Vodvarka* and its implicit conclusion that a change in custody was warranted on the basis of clear and convincing evidence were not erroneous.

As noted, in the context of a change of custody, "proper cause" may be established by a preponderance of the evidence of an appropriate ground that is "relevant to at least one of the twelve statutory best-interest factors[, MCL 722.23(a)-(*l*),] and [is] . . . of such magnitude to have a significant effect on the child's well-being." *Vodvarka*, 259 Mich App at 512. To establish a change of circumstances sufficient to modify custody, the moving party "must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Id.* at 513. Beyond these "threshold" standards, the custody decision itself involves the best-interests factors from MCL 722.23. Even equality or near-equality on the factors does not preclude the satisfaction of the clear-and-convincing-evidence standard of proof. *McCain v McCain*, 229 Mich App 123, 130; 580 NW2d 485 (1998). The *McCain* Court cited with approval the following statement from an earlier case:

> "We disapprove the rigid application of a mathematical formulation that equality or near equality on the statutory factors prevents a party from satisfying a clear and convincing evidence standard of proof. We are duty-bound to examine all the criteria in the ultimate light of the child's best interests." [*Id.* at 130, quoting *Heid v Aaasulewski*, 209 Mich App 587, 596; 532 NW2d 205 (1995).]

The referee and trial court were most concerned with defendant's "willingness and ability . . . to facilitate and encourage a close and continuing parent-child relationship between the child and" plaintiff. MCL 722.23(j).

As explained above, there was a plethora of evidence that defendant had significant and worrisome problems in this area. In addition to the evidence already cited, we also note the testimony of Dr. Pamela Ludolph, a clinical and forensic psychologist, who was qualified as an expert in "child development and child psychology with an emphasis . . . regarding attachment in young children." Dr. Ludolph reviewed written communications between the parties and found "hostility" that seemed clearer on defendant's part. Dr. Ludolph thought it "odd" that defendant did not want to participate in food journaling and also felt that defendant should have been more willing to communicate with plaintiff about the minor child. The doctor stated that defendant was overly concerned about the minor child's routines to the detriment of facilitating co-parenting. The doctor testified that it is important that one parent does not become "marginalized." Dr. Ludolph said that high-conflict divorces are detrimental, that there was conflict in this family, and that the child would "pick that up." She stated that co-parenting therapy might be helpful.

This evidence was adequate to show that "since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Vodvarka*, 259 Mich App at 513. It is notable that

*Vodvarka* employs the phrase "could have" in addition to the word "have." *Id.* In other words, even if the minor child had not yet been negatively impacted, the danger was there. The conclusion that the *Vodvarka* threshold was met was not against the great weight of the evidence. See, generally, *Corporan*, 282 Mich App at 608. The evidence was also adequate to clearly and convincingly show that the change in the custody arrangement was in the minor child's best interests. MCL 722.27(1)(c); *Shade*, 291 Mich App at 23. There was no finding against the great weight of the evidence and there was no abuse of discretion. *Vodvarka*, 259 Mich App at 507-508. There was a great risk that defendant would not, in fact, facilitate a positive relationship between plaintiff and the minor child and that defendant's negative attitude toward plaintiff and her exaggeration of minor issues[4] would end up negatively infecting the father-minor child's relationship.

Affirmed. No costs are awarded. MCR 7.219(A).

/s/ Mark T. Boonstra
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle

---

[4] That defendant exaggerated minor issues was demonstrated by recordings played during the hearing before the referee.