*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CAROL ANN MARSHO CAVANAUGH,

Plaintiff-Appellee,

v

TIMOTHY ALLAN CAVANAUGH,

Defendant-Appellant.

UNPUBLISHED
July 18, 2019

No. 346997
Livingston Circuit Court
Family Division
LC No. 14-048751-DM

Before: M. J. KELLY, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

Defendant Timothy Cavanaugh appeals by right a postjudgment order awarding primary physical custody of the parties' minor son, TC, to plaintiff Carol Cavanaugh. In the 2015 judgment of divorce, defendant had been granted primary physical custody of TC, and plaintiff was given parenting time. Plaintiff subsequently filed a motion to change custody, and in November 2017, the trial court entered an order awarding her physical custody of TC, with defendant receiving parenting time. This Court reversed that order because the trial court had failed to apply the framework set forth in *Vodvarka v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003), with respect to whether proper cause or a change of circumstances warranted a reevaluation of custody. *Cavanaugh v Cavanaugh*, unpublished per curiam opinion of the Court of Appeals, issued September 20, 2018 (Docket No. 341605).[1] The trial court had instead improperly applied the law regarding a change in parenting time. See *Shade v Wright*, 291 Mich App 17; 805 NW2d 1 (2010). On remand, the trial court[2] found proper cause to revisit the prior custody judgment and again awarded plaintiff primary physical custody of TC. We affirm.

---

[1] This custody dispute does not involve the parties' now-adult daughter, CC. *Cavanaugh*, unpub op at 2 n 2.

[2] A different trial judge presided over proceedings on remand; the original judge has been removed from office for reasons unassociated with this case. See *In re Brennan*, __ Mich __; __ NW2d __ (2019).

In *Sinicropi v Mazurek*, 273 Mich App 149, 155; 729 NW2d 256 (2006), this Court, relying primarily on MCL 722.28, addressed the standards of review applicable in child custody cases, observing:

> There are three different standards of review applicable to child custody cases. The trial court's factual findings on matters such as the established custodial environment and the best-interests factors are reviewed under the great weight of the evidence standard and will be affirmed unless the evidence clearly preponderates in the opposite direction.[3] In reviewing the findings, this Court defers to the trial court's determination of credibility. A trial court's discretionary rulings, such as the court's determination on the issue of custody, are reviewed for an abuse of discretion. Further, pursuant to MCL 722.28, questions of law in custody cases are reviewed for clear legal error. [Citations and quotation marks omitted.]

MCL 722.27(1)(c) provides that in a custody dispute, a trial court, for the best interests of the child at the center of the dispute, may "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances." The court, however, is not permitted to "modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). "These initial steps to changing custody—finding a change of circumstance or proper cause and not changing an established custodial environment without clear and convincing evidence—are intended to erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and disruptive changes of custody orders." *Vodvarka*, 259 Mich App at 509 (quotation marks omitted).[4]

The first step in the analysis is to determine whether the moving party has established proper cause or a change of circumstances, applying a preponderance of the evidence standard.

---

[3] Similarly, "[t]his Court reviews a trial court's determination regarding whether a party has demonstrated proper cause or a change of circumstances under the great weight of the evidence standard." *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009).

[4] In *Pierron v Pierron*, 486 Mich 81, 92-93; 782 NW2d 480 (2010), our Supreme Court touched on the next step of the analysis, explaining:

> If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests. Under such circumstances, the trial court must consider all the best-interest factors because a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case.

The statutory best-interest factors are set forth in MCL 722.23.

*Id.* at 508-509. In *McRoberts v Ferguson*, 322 Mich App 125, 131-132; 910 NW2d 721 (2017), this Court explained:

> Proper cause means one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken. In order to establish a change of circumstances, a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a significant effect on the child's well-being, have materially changed. To constitute a change of circumstances under MCL 722.27(1)(c), the evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child. [Citations, quotation marks, and alterations omitted.]

With respect to the issue of "proper cause," the criteria outlined in the statutory best-interest factors "should be relied on by a trial court in deciding if a particular fact raised by a party is a 'proper' or 'appropriate' ground to revisit custody orders." *Vodvarka*, 259 Mich App at 512. In regard to "change of circumstances," the relevance of facts presented should also "be[] gauged by the statutory best interest factors." *Id.* at 514.

Here, we initially note some of the procedural history of the case following remand from this Court. On October 22, 2018, plaintiff filed a motion seeking a temporary order of custody consistent with the November 2017 order that had granted her primary physical custody. She also sought an evidentiary hearing on the matter and "a remand hearing" to address this Court's opinion. At the hearing on the motion, the parties argued about the appropriateness of considering facts that developed after November 2017 and during the appeals period for purposes of analyzing proper cause/change of circumstances and the established custodial environment. The trial court ruled that the custodial and parenting time arrangement set forth in the November 2017 order would remain in effect pending an evidentiary hearing. The court did not make any decision regarding consideration of events occurring after November 2017.

A two-day evidentiary hearing was held on November 30 and December 5, 2018, with the trial court rendering a ruling from the bench on December 7, 2018. On December 17, 2018, the court entered an order granting the parties joint legal custody, awarding primary physical custody to plaintiff, and giving parenting time to defendant. The trial court found "for the reasons stated on the record that proper cause and change of circumstances exist[] to warrant a review of the custody matter pursuant to *Vodvarka* . . . ." The court indicated that the established custodial environment was with defendant at the time of the original custody hearing and "that the current established custodial environment is joint with both parents." The trial court did conclude that, as discussed on the record, there was clear and convincing evidence that it was in TC's best interest to award primary physical custody to plaintiff. It thus appears from the record that the court did not consider events occurring after November 2017 for purposes of defining

the established custodial environment in relation to setting the burden of proof.[5] The trial court made minimal reference to events and facts occurring after November 2017 in regard to whether there was a change of circumstances or proper cause warranting reexamination of custody. And the trial court did consider events taking place after November 2017 in connection with evaluating the best-interest factors, which the parties agreed below was proper.[6]

At the conclusion of the evidentiary hearing following remand, the trial court, ruling from the bench, first determined that proper cause existed to revisit the issue of custody. The trial court's discussion of the matter was a bit unfocused. The court found that defendant had serious control issues, that he blamed everyone else for his problems instead of acknowledging his own faults, that defendant made scenes at various events and had interactions with TC that embarrassed TC and caused him to suffer stress, anxiety, and depression, as opined by the family's therapist, and that defendant "actively alienated his son's relationship with his mother and . . . sister." The trial court further observed that defendant caused TC to suffer stress by encouraging him to keep secrets from plaintiff, that defendant "violated a number of orders" and interfered with plaintiff's parenting time on multiple occasions, that defendant was not cooperative in promoting a relationship between TC and plaintiff, and that defendant was disrespectful to plaintiff on occasion, including an instance of putting up "no trespassing" signs on his property directed at plaintiff. Toward the end of the court's ruling, after it had discussed the statutory best-interest factors, the court noted that it was rejecting defendant's argument that nothing new had arisen since entry of the divorce judgment and therefore there could be no proper cause or change of circumstances justifying a modification of custody. The court stated that a number of the incidents referenced earlier by the court had happened after the divorce was finalized and that "they impacted this child in terms of stress and anxiety."

We hold that the trial court's finding that plaintiff established proper cause as necessary to reexamine TC's best interests was not against the great weight of the evidence—the evidence did not clearly preponderate in the opposite direction. There were three central points made by the trial court that were relevant to a showing of "proper cause." There was evidence that defendant acted in a manner that caused TC to suffer anxiety and depression, that defendant interfered with plaintiff's parenting time on multiple occasions, and that defendant engaged in conduct and behavior that was intended to belittle plaintiff and to alienate TC from plaintiff. These actions had a bearing on the emotional ties between the parties and TC, MCL 722.23(a),

---

[5] There is no issue on appeal regarding the trial court's application of the clear-and-convincing evidence standard.

[6] In *Fletcher v Fletcher*, 447 Mich 871, 889; 526 NW2d 889 (1994), our Supreme Court explained "that on remand, the court should consider *up-to-date information*, including the children's current and reasonable preferences, as well as the fact that the children have been living with the plaintiff during the appeal and any other changes in circumstances arising since the trial court's original custody order." (Emphasis added.) The Court then clarified that it did not mean to "suggest that the events which have taken place during the appellate process give rise to an 'established custodial environment' that . . . alters the burden of proof in favor of the party who has enjoyed custody during the appeal." *Id.* at 889 n 10.

on the capacity and disposition of defendant to give proper guidance to TC, MCL 722.23(b), on the stability and appropriateness of the environment where defendant was the primary custodian, MCL 722.23(d), and on, most importantly, the willingness and ability of defendant to facilitate and encourage a close and continuing parent-child relationship between TC and plaintiff, MCL 722.23(j). See *Vodvarka*, 259 Mich App at 512 (the court should consider the best-interest factors in deciding or gauging whether particular facts give rise to "proper cause" to revisit a custody order).

Defendant argues that the trial court was unclear with respect to the standard it was applying in relation to the threshold question of proper cause or change of circumstances. Defendant notes that the trial court, while citing *Vodvarka* in its order, never once mentioned *Vodvarka* when ruling from the bench. Defendant contends that the trial court never referenced the standards and principles set forth in *Vodvarka*, which defendant considers striking, "given that this Court remanded the case specifically for the correct standard to be applied . . . ."

We are somewhat sympathetic to defendant's complaints. This Court remanded the case "to the trial court so that it may consider whether plaintiff has shown proper cause or change of circumstances under the *Vodvarka* framework." *Cavanaugh*, unpub op at 4. Given this directive, we would have expected the trial court to have referenced *Vodvarka* when ruling from the bench, to have identified the framework described in *Vodvarka*, which we touched on earlier, and to have expressly applied the facts to that framework. Instead, we are left piecing together the court's ruling. That said, the court specifically acknowledged that it had to decide, under a preponderance of the evidence standard, whether plaintiff had shown proper cause or a change of circumstances, the court discussed and found facts that were, for the most part, relevant to the *Vodvarka* framework, and the court cited *Vodvarka* in its order, concluding that proper cause and a change of circumstances had been established. Accordingly, we reject defendant's argument regarding the trial court's alleged failure to employ the *Vodvarka* framework.

Defendant also argues that TC had anxiety and depression issues prior to entry of the judgment of divorce and that there was no testimony that his anxiety became worse after the divorce.[7] Defendant maintains that slight variations in TC's level of stress did not have a

---

[7] In the previous opinion, this Court observed:

> Although we decline to decide this issue, it is unclear whether there was sufficient evidence to uphold the trial court's finding of proper cause or change of circumstances under the *Vodvarka* definitions. The poor relationship between the parties is not new. The key is whether defendant's actions, specifically his interference with plaintiff's parenting time, are having a significant effect on the child's well-being. We acknowledge that there were other matters ostensibly supporting the court's finding, e.g., defendant's new traveling requirements for work and TC's orthodontic care, but we are also cognizant that the Legislature intended that custody changes would only be granted in compelling cases. [*Cavanaugh*, unpub op at 4 (citation omitted).]

significant effect on his well-being and therefore proper cause or a change of circumstances was not shown.

At the time of the divorce, defendant was awarded custody of TC and plaintiff was awarded custody of CC, as recommended by the parties' therapist. The therapist indicated that TC was aligned with defendant and CC was aligned with plaintiff and that the parties openly disparaged each other in front of the children. The therapist thought it best to allow the children to live primarily with their aligned parent and to continue therapy in hopes of eventually moving to shared custody. *Cavanaugh*, unpub op at 1-2.

Defendant's argument that there was at most only a negligible increase in TC's anxiety misses the point, which is that his anxiety did not diminish after being placed with defendant. Defendant's conduct and behavior continued to cause stress and anxiety for TC, despite the fact that TC participated in therapy and that plaintiff was making efforts to reduce the tension between her and defendant. The goal at the time of the divorce was to decrease the animosity between the parties and the stress and anxiety that the animosity created for TC, and there was evidence that defendant was not allowing or encouraging that to happen. There was evidence that, postjudgment, defendant was behaving in a manner and engaging in conduct that sought to disparage plaintiff, that sought to interfere with TC's relationship with plaintiff, and that sought to alienate TC from his mother. And this in turn was causing TC stress, anxiety, and depression. The situation was not getting better but remaining stagnant, and this served as "proper cause" to reexamine the issue of custody. Indeed, evidence of the improvement in TC's mental health after plaintiff was awarded primary physical custody of TC confirms defendant's obstructive role in the matter. On top of that there was the evidence of defendant's interference with plaintiff's parenting time. In sum, the trial court's determination that plaintiff established proper cause to revisit the issue of custody was not against the great weight of the evidence. In light of this ruling, we need not explore whether there was a change of circumstances.

As noted earlier, there is no dispute that the established custodial environment was with defendant at the time plaintiff moved to change custody. Accordingly, plaintiff had the burden to prove by clear and convincing evidence that it was in TC's best interests to change custody, as measured by application of the statutory best-interest factors in MCL 722.23. MCL 722.27(1)(c); *Pierron v Pierron*, 486 Mich 81, 92-93; 782 NW2d 480 (2010). A trial court must examine all of the best-interest factors, stating its findings and conclusions as to each factor. *Foskett v Foskett*, 247 Mich App 1, 9; 634 NW2d 363 (2001). The court does not have to make its custody determination on the basis of a mathematical calculation of the factors; rather, it can properly assign differing weights to the factors when making its decision. *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008). And in *Heid v AAASulewski (After Remand)*, 209 Mich App 587, 594; 532 NW2d 205 (1995), this Court stated that "we are unwilling to conclude that mathematical equality on the statutory factors *necessarily* amounts to an evidentiary standoff that precludes a party from satisfying the clear and convincing standard of proof."

The trial court found that there was clear and convincing evidence warranting a change in custody. Defendant argues that the trial court erred by weighing MCL 722.23 (d), (e), (j), and (*l*) in favor of plaintiff. Those factors provide as follows:

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

\* \* \*

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. . . . .

\* \* \*

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

Defendant argues that the trial court erred by weighing Factor (d) in favor of plaintiff, where defendant offered TC a stable and satisfactory home environment, and where keeping TC in defendant's primary custody would have maintained continuity. "Factor (d) is properly addressed by considering the environments in which the child has lived in the past and the desirability of maintaining the continuity of those environments." *Demski v Petlick*, 309 Mich App 404, 448-449; 873 NW2d 596 (2015). With respect to Factor (d), the trial court, in finding that it favored plaintiff, stated that "[t]his last year has shown that the child has been less depressed, more outgoing, less stress[ed], and is thriving academically and otherwise." This finding was not against the great weight of the evidence. There was testimony by TC's therapist and plaintiff that supported a finding that TC was making significant emotional strides after plaintiff obtained primary physical custody, demonstrating that she was providing a stable and satisfactory home environment for TC. And there was evidence that while TC was residing primarily with defendant, his anxiety and stress was not abating due to defendant's conduct and behavior.

With respect to Factor (e), the trial court favored plaintiff, emphasizing that the family unit existed to a greater degree with plaintiff because of defendant's estrangement from CC and his refusal to allow contact between TC and CC during his parenting time. Defendant contends that the trial court erroneously weighed Factor (e), because defendant's home offered permanence and CC's estrangement from defendant predated the divorce and reflected CC's choice. A child's relationship with other family members is a relevant concern under Factor (e). *Pierron v Pierron*, 282 Mich App 222, 256; 765 NW2d 345 (2009), aff'd 486 Mich 81 (2010). "The sibling bond and the potentially detrimental effects of physically severing that bond should be seriously considered in custody cases where the children likely have already experienced serious disruption in their lives as well as a sense of deep personal loss." *Wiechmann v Wiechmann*, 212 Mich App 436, 439-440; 538 NW2d 57 (1995). In the instant case, TC came to realize that he could not spend as much time with CC when he was with defendant. Additionally, the negative interaction between defendant and CC during a trip that defendant and TC took to visit CC in the summer of 2018 caused great discomfort and distress to TC. This revealed that TC experienced anxiety as a result of the estrangement between CC and defendant,

regardless of defendant's perception of the event or his belief about why he and CC remained estranged. In light of TC and CC's temporarily fractured relationship around the time of the divorce, plaintiff's ability to foster that mending relationship by allowing the siblings to spend time together weighs in plaintiff's favor.

The best-interest factors do not contain the same temporal features that exist in regard to evaluating the threshold question of proper cause and change of circumstances. Consequently, defendant's argument that his estrangement from CC predated the divorce does not undermine the trial court's ruling. Although defendant appeared to accept blame for his role in the breakdown of his relationship with CC, stating that in hindsight he could have behaved differently, his allegation that plaintiff manipulated and brainwashed CC and his belief that CC would need to "wise up" before they could rebuild their relationship revealed that he did not blame himself as much as he blamed plaintiff and CC. Because plaintiff could offer TC more continuity in his relationship with CC, we cannot conclude that the trial court's ruling on Factor (e) was against the great weight of the evidence.

With respect to Factor (j) and facilitation and encouragement of a close parent-child relationship, the trial court found that it strongly favored plaintiff. The court cited many of the instances of interference, obstruction, disparagement, and manipulation that formed the basis for its "proper cause" ruling, which we thoroughly reviewed earlier. There was more than adequate evidence to support the trial court's determination, and the finding was certainly not against the great weight of the evidence. Defendant's arguments to the contrary effectively challenge credibility assessments and findings that were the subject of conflicting evidence; therefore, they are unavailing. See *Sinicropi*, 273 Mich App at 155.[8]

Finally, with respect to Factor (*l*), which allows consideration of any other factor deemed relevant by a court, the trial court observed:

> The evidence shows that the child is thriving in his current placement. The testimony demonstrated the minor child behaves as if a weight has been lifted.

---

[8] We note the following discussion in this Court's opinion in *McRoberts*, 322 Mich App at 140-141, which we find relevant here:

> [T]he court plainly placed great weight on Factor (j), which was within its discretion. "It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents." . . . It can be inferred from the court's analysis that it doubted whether the child would be able to have a strong relationship with defendant if plaintiff retained sole physical custody. Indeed, plaintiff's repeated acts of contempt relative to parenting time were troubling and reflected an inability by plaintiff to facilitate and encourage a close and continuing parent-child relationship between defendant and his daughter. Conversely, there was no evidence suggesting that defendant had interfered with the relationship between plaintiff and the child. [Citations omitted.]

He's less anxious. Does not appear to be sad, is more social, and outgoing. This [factor] . . . strongly favors the mother."

The court continued on about the great strides that TC had made in the last year while primarily in plaintiff's custody. Defendant argues that the court's finding under Factor (*l*) was inconsistent with the court's determination that the parties were equal as to Factor (h), which concerns a child's "home, school, and community record." Defendant is correct that both parties testified that TC had been doing well academically and was involved in various extracurricular activities before and after the change in custody. The trial court's focus, however, was on the alleviation of TC's symptoms of anxiety and depression, and this global improvement in TC's mood was not tied to a specific home, school, or community setting and is not otherwise specifically accounted for in the best-interest factors.

We affirm. We award taxable costs to plaintiff as the prevailing party under MCR 7.219.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher

-9-