*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CATALINA STARR SMITH,

        Plaintiff-Appellant,

v

BLAKE MICHAEL ROTTERDAM,

        Defendant-Appellee.

UNPUBLISHED
January 27, 2022

No. 356991
Lenawee Circuit Court
LC No. 18-046022-DS

Before: GADOLA, P.J., and MARKEY and MURRAY, JJ.

PER CURIAM.

In this child-custody dispute, plaintiff appeals by right the trial court's opinion and order granting defendant sole physical and shared legal custody of their minor child, HR. We affirm.

Plaintiff gave birth to HR in September 2017 when the parties resided together in Morenci, Michigan. When the couple's relationship ended, defendant moved to a location near his hometown in Ohio. Defendant's new home was about 35 minutes from Morenci. Plaintiff remained in Morenci with HR. In December 2018, plaintiff filed a complaint for child support. Defendant answered and then filed a counterclaim to establish custody, requesting an order for joint legal and physical custody of HR. On January 16, 2019, the trial court entered a temporary custody and parenting-time order awarding the parties joint legal and physical custody with equal parenting time. This was an ex parte order entered on defendant's motion, and the order indicated that it would become a standard temporary order if no objections were filed within 14 days. Plaintiff did not file an objection to the ex parte order. Between February 2019 and March 2021, the parties exchanged allegations of physical abuse, improper parenting, and ex parte motions to suspend the other's parenting time. The allegations of physical abuse, coming from both parties, were never substantiated by Child Protective Services (CPS).[1] Plaintiff married William Anthony

---

[1] At different points in the proceedings, an ex parte order granting plaintiff exclusive parenting time was issued and then dissolved, and an ex parte order granting defendant exclusive parenting time was issued and then dissolved. These ex parte orders had been entered based on claims of

in October 2020, and they had a child together, KGA. Defendant became engaged, and he and his fiancé, Kendra Brehm, lived together in Ohio. Eventually, both plaintiff and defendant requested sole physical custody of HR. The trial court scheduled an evidentiary hearing for March 18, 2021, regarding the issue of custody.

On the morning of the evidentiary hearing, plaintiff objected to the hearing's taking place via Zoom because she was concerned about allegations and photographs related to physical abuse being on the Internet. Plaintiff urged the trial court to adjourn the evidentiary hearing until it could be held in person. The trial court denied the request for an adjournment and decided to go forward with the hearing; however, the court did agree not to display the photographs over Zoom.

The evidentiary hearing spanned two days. The parties presented evidence regarding parenting skills, purported physical abuse, HR's behavioral issues, plaintiff's refusal to have those behavioral issues investigated by a specialist, a custody evaluation performed by Kenneth Cunningham, Ph.D., in September 2020, HR's medical care, and the parties' contentious relationship. The trial court reviewed photographs allegedly depicting signs of physical abuse and neglect, along with pictures of HR wearing clothing characterized as improper. The court also examined the custody evaluation.

Ultimately, the trial court issued a written opinion and order. The trial court concluded that HR had an established custodial environment with both parents; therefore, the court employed the clear-and-convincing-evidence standard with respect to each party's request for sole physical custody. The trial court did not address whether there had been a change of circumstances or proper cause for purposes of altering the temporary custody order. The trial court found that four best-interest factors favored defendant, while none fully favored plaintiff. The trial court opined that its evaluation of the factors amounted to clear and convincing evidence that it was in HR's best interests to award sole physical custody to defendant.[2] Plaintiff appeals by right.

Plaintiff raises four separate issues on appeal. First, plaintiff contends that the trial court erred by finding that there existed a joint or shared established custodial environment. Second, plaintiff argues that the trial court erred by failing to consider whether proper cause or a change of circumstances was demonstrated as necessary to modify the temporary custody order. Third, plaintiff maintains that the trial court erred by denying her motion to adjourn the Zoom evidentiary hearing. Fourth and finally, plaintiff asserts that the trial court erred by finding that the best-interest factors favored granting defendant sole physical custody under the clear-and-convincing-evidence standard.

In *Sinicropi v Mazurek*, 273 Mich App 149, 155; 729 NW2d 256 (2006), this Court, relying primarily on MCL 722.28, addressed the standards of review applicable in a child custody dispute, observing:

_____

abuse and neglect that were not substantiated. In both instances, the trial court reverted to its temporary custody order.

[2] The parties retained joint legal custody.

There are three different standards of review applicable to child custody cases. The trial court's factual findings on matters such as the established custodial environment and the best-interests factors are reviewed under the great weight of the evidence standard and will be affirmed unless the evidence clearly preponderates in the opposite direction. In reviewing the findings, this Court defers to the trial court's determination of credibility. A trial court's discretionary rulings, such as the court's determination on the issue of custody, are reviewed for an abuse of discretion. Further, . . . questions of law in custody cases are reviewed for clear legal error. [Quotation marks and citations omitted.[3]]

MCL 722.27 provides, in part:

> (1) If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:
>
> (a) Award the custody of the child to 1 or more of the parties involved or to others and provide for payment of support for the child, until the child reaches 18 years of age. . . . .
>
> (b) Provide for reasonable parenting time of the child by the parties involved, by the maternal or paternal grandparents, or by others, by general or specific terms and conditions. . . . .

MCL 722.27(1)(c) provides that in a custody dispute, the trial court, for the best interests of the child at the center of the dispute, may "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances." But the court is not permitted to "modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). "These initial steps to changing custody—finding a change of circumstance or proper cause and not changing an established custodial environment without clear and convincing evidence—are intended to erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and disruptive changes of custody orders." *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003) (quotation marks omitted). "Where no established custodial

---

[3] A court commits clear legal error when it makes a mistake in its choice, interpretation, or application of the law. *Shade v Wright*, 291 Mich App 17, 21; 805 NW2d 1 (2010). In the child-custody context, the trial court abuses its discretion when its decision is so grossly violative of fact and logic that it evidences passion or bias rather than the exercise of reason. *Shulick v Richards*, 273 Mich App 320, 324; 729 NW2d 533 (2006). "This Court reviews a trial court's determination regarding whether a party has demonstrated proper cause or a change of circumstances under the great weight of the evidence standard." *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009).

environment exists, the trial court may change custody if it finds, by a preponderance of the evidence, that the change would be in the child's best interests." *LaFleche v Ybarra*, 242 Mich App 692, 696; 619 NW2d 738 (2000).

In *Pierron v Pierron*, 486 Mich 81, 92-93; 782 NW2d 480 (2010), our Supreme Court discussed the next step of the analysis:

> If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests. Under such circumstances, the trial court must consider all the best-interest factors because a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case.

The statutory best-interest factors are set forth in MCL 722.23. And it is ultimately an assessment of the best-interest factors that governs a trial court's decision on custody. MCL 722.23 (the best interests of a child means the sum total of the enumerated factors, which are "to be considered, evaluated, and determined by the court"). "Where the trial court has failed to analyze the issue of child custody in accord with the mandates of MCL 722.23 and make reviewable findings of fact, the proper remedy is to remand for a new child custody hearing." *Bowers v Bowers*, 190 Mich App 51, 56; 475 NW2d 394 (1991). Findings and conclusions regarding the best-interest factors "need not include consideration of every piece of evidence entered and argument raised by the parties." *MacIntyre v MacIntyre*, 267 Mich App 449, 452; 705 NW2d 144 (2005). But "the record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings." *Id.*

Plaintiff first contends that the trial court erred by finding that there existed a joint or shared established custodial environment. Plaintiff argues that HR's established custodial environment was solely with her. We do not understand why plaintiff has raised this issue. The trial court applied the more burdensome standard—clear and convincing evidence—and even were we to rule that HR's established custodial environment existed solely with plaintiff, as she requests, the clear-and-convincing-evidence standard would apply. Accordingly, we conclude that any alleged error was entirely harmless, and thus reversal is unwarranted. Our ruling is consistent with this Court's decision in *Kubicki v Sharpe*, 306 Mich App 525, 540-541; 858 NW2d 57 (2014), wherein the panel stated:

> The circuit court failed to articulate any findings specifically identifying [the child's] established custodial environment. Nevertheless, the court required [father] to prove the child's best interests "by clear and convincing evidence." Thus, the court implicitly found that the child's established custodial environment lay either with [mother] or with both parents. Because the court held [father] to the highest standard of proof applicable to custody proceedings, the omission qualifies as harmless error.

Plaintiff next asserts that the trial court erred by failing to address whether proper cause or a change of circumstances existed as necessary to modify or amend the temporary order of joint physical custody. This argument has no merit. The existing custody order was a temporary order

that was entered without an evidentiary hearing or any specific findings regarding HR's best interests. The first and only custody order issued on the basis of evidence presented at an evidentiary hearing and an evaluation of the best-interest factors enumerated in MCL 722.23 was the custody order now being challenged in this appeal. Therefore, a change of circumstances or proper cause did not have to be shown. See *Butler v Simmons-Butler*, 308 Mich App 195, 202 n 2; 863 NW2d 677 (2014); *Kessler v Kessler*, 295 Mich App 54, 61; 811 NW2d 39 (2011); *Thompson v Thompson*, 261 Mich App 353, 360-363; 683 NW2d 250 (2004).

In *Thompson*, "the parties stipulated that plaintiff would have temporary physical custody of the children, and the trial court entered an order to that effect." *Thompson*, 261 Mich App at 354. Subsequently, a full trial on custody was conducted, and the defendant was awarded physical custody, with the trial court making findings concerning the established custodial environment and the children's best interests. *Id.* at 355. On appeal, the plaintiff argued "that it was error for the trial court to change custody of the children from plaintiff to defendant without requiring defendant to show a change of circumstances or proper cause[.]" *Id.* at 357. This Court, relying on the language of MCL 722.27(1)(c) and noting that there had been no evidentiary hearing or evaluation of the best-interest factors before the trial, held that the trial court did not have to address or rule on whether there had been a change of circumstances or a demonstration of proper cause. *Id.* at 358, 362-363. Under the circumstances, the panel described the custody order entered after trial as the "initial" order of custody in the case. *Id.* at 361. And, according to the Court, "the requirement to show proper cause or change of circumstances does not apply to the trial court's initial award of custody . . . ." *Id.* at 362.[4] The Court explained:

> If we were to agree with plaintiff, in essence, a party who stipulates a temporary custody agreement would not be able to have an evidentiary hearing unless a change of circumstances or proper cause was shown. This is improper because defendant is entitled to have the trial court make findings on the best interest factors. The trial court cannot blindly accept the stipulation of the parents, but must independently determine what is in the best interests of the child. [*Id.* at 363 (quotation marks and citation omitted).]

We conclude that *Thompson* controls and that the trial court here did not have to address whether there was proper cause or a change of circumstances. Plaintiff argues that *Thompson* is distinguishable because it involved a stipulated temporary custody order whereas no stipulation was reached in this case. We disagree. Defendant sought an ex parte temporary custody order, which was entered by the trial court, and plaintiff did not object to the order, thereby rendering the ex parte temporary order a simple temporary order. These circumstances are, effectively, no different from those in *Thompson* involving the stipulated temporary order. Furthermore, as in *Thompson*, no evidentiary hearing and evaluation of the best-interest factors occurred with respect to the temporary order. In sum, we conclude that plaintiff's argument fails under *Thompson*.

---

[4] Indeed, in the instant case, the trial court indicated in its written opinion and order that it was entering "an initial custody order."

Plaintiff next contends that the trial court abused its discretion by denying her motion to adjourn the evidentiary hearing until it could be held in person as opposed to on Zoom. The reason for the requested adjournment was that the photographs of alleged abuse and associated foundational testimony could potentially be recorded through the Internet and used to harm HR in the future.

A trial court's denial of a motion to adjourn is reviewed on appeal for an abuse of discretion. *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000). And even if a court abuses it discretion, reversal is unwarranted unless prejudice is established. *Id.* In this case, assuming for the sake of argument that the trial court abused its discretion by denying the motion for adjournment, which we do not believe is the case, no prejudice is even alleged, let alone demonstrated. Plaintiff fails to explain how the denial of her motion harmed her case for custody. Plaintiff does not claim that she altered her approach in presenting her case because it was conducted via Zoom. Plaintiff does not assert that she would proceed differently were we to order a new evidentiary hearing. Because plaintiff suffered no prejudice, reversal is unwarranted. To the extent that harmful information or photographs regarding HR became accessible and that such circumstances would actually qualify as pertinent prejudice for purposes of the adjournment request, nothing we could order would undo the harm, thereby rendering the matter moot. See *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (discussing the doctrine of mootness). In sum, we reject plaintiff's argument that a new evidentiary hearing should be conducted.

Finally, plaintiff argues that the trial court abused its discretion by awarding defendant sole physical custody of HR and made factual findings that were against the great weight of the evidence when addressing the statutory best-interest factors. We disagree.

The trial court found that the parties were equal or that the evidence was neutral with respect to factors (a), (b), (d), (e), (f), (g), and (j) of MCL 722.23. The court found that none of the remaining factors fully favored plaintiff and that remaining factors (c), (h), (k), and (*l*) of MCL 722.23 favored defendant.[5]

With respect to factor (a) ("The love, affection, and other emotional ties existing between the parties involved and the child"), the trial court found:

> Both parties testified that they have love, affection and emotional ties with [HR]. Both parties offered witnesses who testified that they have love[,] affection and emotional ties with [HR]. Dr. Kenneth Cunningham conducted a child custody evaluation in this case in which he found an equal expression of affection for [HR]. This is further supported by the fact that the parties have shared equal parenting time for most of [HR]'s life. This factor weighs equally.

Plaintiff contends that the evidence revealed that she has a stronger emotional bond with HR, considering that HR lived primarily with her for the first couple years of his life, that defendant did not request custody until plaintiff sought support, that defendant works full-time outside the

---

[5] With respect to factor (*l*), the trial court found that it favored plaintiff in part and defendant in part.

home and spends little time with HR, and that plaintiff is a stay-at-home mother who spends considerably more time with HR as compared to defendant. Plaintiff complains that the trial court failed to take these facts into consideration.

We conclude that the trial court's finding that the parties were equal with regard to factor (a) was not against the great weight of the evidence. The evidence cited by the trial court was sufficient to support the court's ruling, and, once again, findings by a court "need not include consideration of every piece of evidence entered and argument raised by the parties." *MacIntyre*, 267 Mich App at 452. The court's failure to mention the evidence referenced by plaintiff did not render the court's finding against the great weight of the evidence, especially where the evidence noted by plaintiff appears to assume that love, affection, and emotional ties are necessarily greater between a child and the parent who sees the child more often. We do not agree with this proposition.

With respect to factor (b) ("The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any"), the trial court ruled:

> Both parties testified that they are able to provide [HR] with love, affection and guidance. [Plaintiff] testified to her preference for being a stay at home mother for [HR] and [KGA,] her daughter from another relationship. While she appears to recognize a need to obtain some employment, she testified that her goal was to only work during the time that [HR] is with his father. [Defendant] testified to his making daily decisions with his first priority being how it will affect his time with [HR]. He also testified to participating in numerous educational and recreational activities with [HR].

> Defendant testified that he practices Catholicism, is taking [HR] to church with him and has had him baptized. The evidence of Plaintiff's religious practices is less clear. According Dr. Cunningham, Plaintiff is a devout Protestant. Plaintiff herself testified that while she is Christian, she has no particular denomination. She testified that she attends church regularly but does not know the denomination of the church. While she does not perceive any major differences between herself and Defendant with respect to religion, she testified that she objected to Defendant having [HR] baptized without first discussing it with her and obtaining her consent. Defendant testified that he told Plaintiff about the baptism verbally during a parenting time exchange. Defendant's fiancé, Kendra Brehm[,] testified that she heard Defendant tell Plaintiff about the baptism while on the telephone with her. At three years old, [HR] does not have an established religion or creed. Although the differences appear to be relatively minor, the parents have not agreed on this issue. This factor weighs equally.

Plaintiff argues that factor (b) favored her and that the trial court's conclusion to the contrary was against the great weight of the evidence. Plaintiff contends that Brehm did not testify in the manner indicated by the trial court; she did not claim that she overheard defendant tell plaintiff on the phone about the baptism. Plaintiff further contends that she did not communicate with defendant by phone. Finally, plaintiff maintains that the evidence demonstrated that she had

no problem with HR's being raised Catholic and that she was willing to provide guidance to HR and foster his religious beliefs no matter what religion he might eventually choose.

We conclude that the trial court's finding that the parties were equal with regard to factor (b) was not against the great weight of the evidence. First, while the court may have been inaccurate concerning Brehm's testimony, the fact is that the court did not ultimately indicate whether it believed plaintiff or defendant with respect to whether defendant informed plaintiff about the baptism. The trial court simply recognized that there was a disagreement as to whether plaintiff was told about the baptism, along with recognizing that there were relatively minor differences regarding religion and noting that HR was too young to have a religion or creed. Moreover, the evidence reflected that defendant was also willing to provide guidance to HR in regard to religion and to foster his religious beliefs. Additionally, factor (b) also concerns a party's capacity to give a child love, affection, and guidance generally, and plaintiff raises no issue on those matters. There is nothing in the record that undermines the trial court's finding on factor (b).

With respect to factor (c) ("The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs"), the trial court found:

> Plaintiff is not currently employed outside the home. She relies on her husband for the family's financial support. The [custody] evaluation indicated that [plaintiff] and Mr. Anthony intended for [plaintiff] to remain a stay at home mother, and that they intended to rely on Mr. Anthony's income to support the family. However[, plaintiff] testified that she was looking for part time work but also testified that it was not necessarily for the money but to have some time outside of the home.

> Mr. Anthony's work history appears unstable. Mr. Anthony testified that he is starting a new job that is closer to home than [his] previous employer, Team Johnson, where he worked for three weeks. Prior [to] Team Johnson, Mr. Anthony worked for Roth Fabricating for two weeks when he was terminated due to absenteeism. Before Roth Fabricating, Mr. Anthony was unemployed for 5-6 months and before that he worked for State Line Farms where he was terminated due to not being able to perform tasks he was asked to perform. Therefore, it appears that relying on Mr. Anthony as the sole breadwinner for the household poses a financial risk that he is not able to maintain consistent employment.

> [Defendant] has been employed at the same employer since November 2019. Ms. Brehm has been employed with the same employer since September 2019. It is also appropriate given the income levels of the parties that both members of the household are working. Given that [defendant]'s work history is more consistent and stable, and that [plaintiff] is financially reliant on Mr. Anthony's unstable work history, [defendant] has shown a greater capacity and disposition to provide for [HR]'s material needs. This factor weighs in favor of Defendant.

Plaintiff argues that the trial court's finding on factor (c) was against the great weight of the evidence because: it was contrary to Dr. Cunningham's position; it punished plaintiff for being

poor and a stay-at-home mother; it failed to consider that plaintiff received welfare benefits; it failed to acknowledge that plaintiff and Anthony were current on their rent; it failed to acknowledge that plaintiff was looking for part-time work; it did not appreciate that defendant's job resulted in the need to rely on others to care for HR; it ignored the testimony that plaintiff provided HR with health insurance after defendant failed to execute the forms to enroll HR in defendant's private insurance plan provided through his employer; and it failed to recognize that defendant did not always give plaintiff the results of HR's medical appointments.

Factor (c) focuses on the capacity and disposition of the parties to provide a child with the necessities of life, and the evidence cited by plaintiff does not serve as a valid basis to conclude that the trial court's ruling was against the great weight of the evidence. Indeed, the evidence quite clearly reflected that defendant had the greater capacity and disposition to provide for the child's needs. Anthony's work history was dismal, and plaintiff was supposedly merely looking for part-time employment. On the other hand, defendant and Brehm were both employed with the same employers for a couple of years. And defendant was earning $41,000 a year. The trial court was not punishing plaintiff for being poor or a stay-at-home mother; rather, the court was merely applying factor (c), which requires a court to examine economic realities when assessing a child's best interests. We also note that there was conflicting evidence and shortcomings relative to some of plaintiff's evidentiary claims, e.g., matters regarding medical insurance for HR. Although some of the arguments posed by plaintiff might slightly erode the court's ruling, we conclude that the evidence did not clearly preponderate in the opposite direction.

With respect to factor (d) ("The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity"), the trial court ruled as follows:

> Since January 2019, [HR] has spent equal time with both Plaintiff and Defendant. During that time, [plaintiff] has lived in two locations with the move being due to a problem with the house she was renting. [Defendant] has lived in the same home for that entire time. This factor weighs equally.

The gist of plaintiff's argument on appeal regarding factor (d) is that the court completely ignored the period of time from HR's birth in September 2017 until the temporary order was entered in January 2019, during which period defendant showed no interest in spending time with HR, and which mindset did not change until plaintiff sought support.

Factor (d) necessarily places the focus on a child's current or recent environment, the stability of that environment, and the desirability of maintaining or continuing that environment. Accordingly, plaintiff's attention on HR's first 16 months of life misses the mark, and the trial court properly examined the two plus years since the ex parte temporary order was entered in January 2019. We conclude that the trial court's finding that the parties were equal with respect to factor (d) was not against the great weight of the evidence.

In regard to factor (e) ("The permanence, as a family unit, of the existing or proposed custodial home or homes"), the trial court found:

> [Plaintiff] has been married to M[r]. Anthony since October 2020. They have lived together for three years. They have a child together. This appears to be

-9-

a stable family unit. [Defendant] has lived with Ms. Brehm for about two years. They are engaged to be married. This also appears to be a stable family unit. [Plaintiff] receives occasional childcare assistance from her mother. [Defendant] receives regular childcare assistance from his grandmother and Ms. Brehm's grandmother. This factor weighs equally.

Plaintiff argues that factor (e) weighed in her favor and that the trial court's finding to the contrary was against the great weight of the evidence. In support, plaintiff points to the evidence that defendant moved out of the home that he shared with plaintiff and HR, that defendant rents his home, that while plaintiff also rents, her landlord indicated that she could live there indefinitely, that plaintiff is married, that her mother and other relatives live nearby, and that HR's half-sibling lives in plaintiff's home.

The trial court acknowledged most of the evidence cited by plaintiff, but simply determined that defendant's circumstances were sufficiently comparable, which determination was supported by the record. We cannot conclude that the court's finding that the parties were equal in connection with factor (e) was against the great weight of the evidence.

With respect to factor (f) ("The moral fitness of the parties involved"), the trial court ruled that "[t]here are no significant moral fitness factors that are not adequately addressed in other areas of this opinion. This factor is neutral."

Plaintiff contends that factor (f) favored her and that the trial court's determination that factor (f) was neutral was against the great weight of the evidence. Plaintiff supports this argument by directing us to evidence that defendant has anger, aggression, and drinking problems.

This argument fails because defendant and his fiancée Brehm testified in a manner that challenged and countered the claims of anger management and alcohol problems, and we defer to credibility assessments made by the trial court in a custody hearing. *Sinicropi*, 273 Mich App at 155. We also question whether plaintiff's complaints actually concern *moral* fitness. We conclude that the trial court's finding that factor (f) was neutral was not against the great weight of the evidence.

With respect to factor (g) ("The mental and physical health of the parties involved"), the trial court found that "[t]here was no evidence that either party suffers a physical or mental health issue that affects his or her ability to parent. This factor is neutral." Plaintiff does not challenge this finding.

With respect to factor (h) ("The home, school, and community record of the child"), the trial court ruled:

> [HR] has not yet been enrolled in school and does not yet have a school or community record. The evidence does show that [HR] has a home record that includes some significant adverse behaviors. The child custody evaluation, and Dr. Cunningham in his testimony, described an incident in which [HR] was inconsolable after not getting his way. Mr. Anthony's testimony confirmed that this incident occurred. [Defendant] testified to similar incidents occurring during his

parenting time. Both parties testified that [HR] exhibits difficult behaviors after parenting time exchanges. Both [plaintiff] and [defendant] must seriously contemplate the possibility that their behavior toward each other and inability to engage in positive co-parenting contribute to this behavior.

It does appear that [defendant] is more inclined to seek an[] evaluation and/or treatment for [HR]'s behavior issues. It was recommended to him by [HR]'s physician. He communicated the recommendation to [plaintiff] who did not agree to an evaluation. Based on the evidence regarding [HR]'s behavior issues, which includes that he has punched walls, broken doors and can be self-injurious, an evaluation appears appropriate. This factor weighs in favor of [defendant].

Plaintiff argues that factor (h) should have been found in her favor or weighted equally and that the trial court's finding that factor (h) favored defendant was against the great weight of the evidence. Plaintiff points to her testimony that HR was too young to undergo a behavioral evaluation and that he needed to be old enough to speak for himself absent the influence of being coached to lie by defendant. Plaintiff also notes that Dr. Cunningham's testimony supported her decision regarding a behavioral evaluation.

We first note that plaintiff does not challenge the trial court's findings that HR has serious behavioral issues and that the parties' contentious relationship might be contributing to HR's behavior. Furthermore, defendant's desire to seek treatment and an evaluation for HR was recommended by HR's physician. Given HR's particular troubling behaviors and the doctor's recommendation, we cannot conclude that there was error in regard to the trial court's determinations that a behavioral evaluation was appropriate and that factor (h) favored defendant because defendant sought to address and confront HR's behaviors.[6] Stated otherwise, the trial court's ruling on factor (h) was not against the great weight of the evidence.

With respect to factor (i) ("The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference"), the trial court found that HR was "not at an age where he can express a reasonable preference based upon his best interests." Plaintiff does not contest the court's finding on factor (i).

With respect to factor (j) ("The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents"), the trial court ruled:

The parties have a contentious relationship. They have each filed ex parte orders alleging physical abuse against the other. Both parties testified that they have very little communication with each other and what communication they do have is st[r]ained and stressful. The evidence indicates that the parties share responsibility for this situation. Both must recognize that they have an obligation to keep the other parent informed about what happens during his or her parenting

---

[6] We note that while Dr. Cunningham generally supported plaintiff's position, he did find HR's behavior troubling.

time and to communicate with the other in a civil manner. This factor weighs equally.

Plaintiff argues that factor (j) weighed in her favor and that the trial court's ruling to the contrary was against the great weight of the evidence. In support, plaintiff references testimony demonstrating that defendant was not willing or able to facilitate and encourage a close relationship between plaintiff and HR; indeed, he actively engaged in conduct to undermine the relationship. Plaintiff, however, completely ignores the evidence showing that she engaged in comparable conduct. We conclude that the trial court's finding that the parties were equal in regard to factor (j) was not against the great weight of the evidence.

With respect to factor (k) ("Domestic violence, regardless of whether the violence was directed against or witnessed by the child"), the trial court found as follows:

> Both parties allege that the other has physically abused [HR]. Both parties have been investigated by CPS related to abuse allegations none of which have been substantiated. Both parties have obtained ex parte orders suspending the other's parenting time based on allegations of physical abuse that were later dissolved. Both parties submitted photographs depicting [HR] with bruising. Both parties agree that [HR] is a rambunctious young child and that some of the bruising and scratches depicted in the photographs is likely due to [HR]'s rambunctious nature. The evidence also demonstrates that [HR] sometimes acts out when he is angry and engages in self-injurious behavior.

> The January 16, 2019 temporary order prohibits corporal punishment. Both parties testified that they discipline [HR] by making him stand in a corner or sit on a step. Defendant previously provided testimony from Allison Nortley. Ms. Nortley testified that she has seen [plaintiff] spank [HR]. [Plaintiff]'s mother, Michele Smith, was asked whether [plaintiff] uses any form of corporal punishment and answered that she has not seen [plaintiff] use corporal punishments in the last six months. This necessarily implies that she has seen [plaintiff] administer corporal punishment at some point. Consequently, the evidence demonstrates that [plaintiff] has engaged in corporal punishment in violation of the court order. This factor weighs in favor of [defendant].

Plaintiff argues that factor (k) favored her, or, at a minimum, the parties were equal and that the trial court's ruling that factor (k) favored defendant was against the great weight of the evidence. Plaintiff calls into question the testimony relied on by the trial court in determining that plaintiff violated the court order prohibiting corporal punishment. She also contends that inflicting corporal punishment or spanking HR does not equate to committing domestic violence.

We agree with plaintiff that there is a distinction between corporal punishment and domestic violence. We conclude that the trial court erred to the extent that it found that a violation of the court order through the infliction of corporal punishment amounted to domestic violence for

purposes of factor (k).[7] But we do conclude that a violation of a court order can be considered under the catchall factor that we next address.

With respect to factor (*l*) ("Any other factor considered by the court to be relevant to a particular child custody dispute"), the trial court found:

> [HR] has a half-sister. It is important that he have an opportunity to bond and form a relationship with [KGA]. This factor weighs in favor of [plaintiff].

> [Plaintiff] does not currently have a driver's license. She does have a permit that allows her to drive when a licensed driver over the age of eighteen is also in the car. The January 16, 2019 court order requires that [HR] only be transported by a licensed driver. [Plaintiff] as well as Michele Smith testified that there are times when [plaintiff] transports [HR] in the car without having another licensed driver present. Consequently, it appears that [plaintiff] has transported [HR] in violation of the Court's order. This factor weighs in favor of [defendant].

While plaintiff does not challenge the first part of the trial court's ruling relative to factor (*l*) and KGA, plaintiff argues that the remainder of the court's ruling was against the great weight of the evidence. In support of her argument, plaintiff maintains that the evidence regarding her driving without a licensed driver being present was unclear at best.

Assuming that the evidence was not adequate to find that plaintiff drove HR absent the presence of a licensed driver in the vehicle and in violation of court order, we do find that there was sufficient evidence that plaintiff violated the court order prohibiting corporal punishment. The trial court could reasonably infer from the testimony by plaintiff's mother that plaintiff employed corporal punishment after the temporary order was entered prohibiting corporal punishment. Also, plaintiff does not contest the court's finding that Nortley previously testified that she viewed plaintiff spanking HR. Therefore, albeit on a different basis, we cannot conclude that the trial court's finding that plaintiff violated a court order was against the great weight of the evidence.

Plaintiff finally argues that "[w]hile the trial court has discretion to accord differing weigh[t] to the best interest factors, the trial court failed to discuss which of the factors it considered to be of more weight, why it considered them to be so, and why the factors were so heavily in favor of [defendant] that the court considered them significant in nature and degree." (Internal quotation marks omitted.) The trial court concluded its opinion and order by ruling:

> Although many of the factors weighed equally, those that favored [defendant] were significant in nature and degree such that a change of custody is appropriate. Based on the foregoing, the court finds by clear and convincing evidence that it is in [HR]'s best interests for the parties to have joint legal custody and for [defendant] to have physical custody.

---

[7] We note that the trial court itself did not actually state that plaintiff engaged in domestic violence.

In *Heid v AAASulewski (After Remand)*, 209 Mich App 587, 594; 532 NW2d 205 (1995), this Court observed:

> We do not quarrel with the proposition that where an evidentiary standoff exists, a party cannot meet the burden of proof by clear and convincing evidence. However, we are unwilling to conclude that mathematical equality on the statutory factors necessarily amounts to an evidentiary standoff that precludes a party from satisfying the clear and convincing standard of proof. In this case, plaintiff met her burden. We cannot conclude that the circuit court committed clear legal error. The process of reviewing these wrenching decisions is not, at bottom, a problem of quantitative analysis; our duty is finally to analyze the quality of the evidence adduced to determine whether a party's burden of proof is met.

In this case, the trial court's determinations that several factors favored defendant, that part of only one factor favored plaintiff, and that those factors favoring defendant were significant in nature and degree adequately supported the court's conclusion that there was clear and convincing evidence that awarding defendant sole physical custody was in HR's best interests. We hold that the trial court did not abuse its discretion by deciding to award physical custody to defendant.

We affirm. We decline to tax costs under MCR 7.219.

/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Christopher M. Murray