*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NAVEEN CHANDRA PASUPULETI,

      Plaintiff-Appellant,

v

ASHLEY MURDAUGH,

      Defendant-Appellee.

UNPUBLISHED
May 5, 2022

No. 358384
Oakland Circuit Court
LC No. 2019-872184-DP

Before: LETICA, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

In this child-custody action, plaintiff-father, Naveen Chandra Pasupuleti, appeals as of right the trial court's opinion and order awarding joint legal and physical custody of their three-year-old child, KK, to himself and defendant-mother, Ashley Murdaugh. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After KK's birth in December 2016, the parties lived together and raised KK jointly until the summer of 2018, when they separated. Thereafter, KK spent substantial periods of time with both parents.

Father initiated this custody action by filing a complaint alleging that (1) mother "has a history of heavy marijuana use"; (2) after the parties separated, father had KK tested for marijuana on several occasions[1]; (3) twice over the course of three months, KK had "tested positive for THC[2] as a result of exposure to marijuana in Mother's care"; (4) during that same timeframe, father had tested negative for THC; (5) "on or about March 22, 2019," father confronted mother regarding KK's positive drug-test results, and thereafter, mother did "her utmost to destroy the

---

[1] Father explained that he decided to have KK tested for marijuana because he was suspicious that the child was still being exposed to it.

[2] "Tetrahydrocannabinol, or THC, is the physiologically active component of marijuana." *People v Koon*, 494 Mich 1, 3 n 3; 832 NW2d 724 (2013).

-1-

father-child relationship by depriving Father and the child of any contact with each other." Father sought an order granting him sole legal and physical custody of KK, with "limited and/or supervised" parenting time for mother "given her incessant use of marijuana in the presence of the minor child." In her answer, mother admitted that she had used marijuana medicinally in the past and that KK was born with THC in his system. She denied "heavy" marijuana use and asserted that she "ha[d] never smoked marijuana in the presence of the minor child." Mother also asserted that an order of sole custody in favor of father would not serve KK's best interests. The matter proceeded to a three-day bench trial.[3]

Mother, age 33 at the time of trial, has two other children. Her oldest child, JA, was 15 years old at the time of trial, and her middle child, LM, was 14 years old.

Father, age 38, was hospitalized in 2018 with Guillain-Barré Syndrome ("GBS"), which initially resulted in paralysis from the chest level but has steadily improved over time. Father is also actively recovering from alcoholism. He testified that he no longer uses a walker, is able to climb stairs independently, and has no problem "chasing [KK] around[.]" At the time of trial, father was attending college and expected to graduate with a bachelor's degree in May 2020. Although father was not formally employed, he helped his parents in his father's medical office, assisted them with household chores, and aided them in managing several "properties" that they own. His parents pledged to support father financially until he fully recovers from GBS.

KK's paternal grandmother testified that she is "a homemaker" and "help[s] [her] husband," a neurologist, "in his medical office." They have a large three-story home in Grand Blanc. Father lives there with KK when the child is in father's custody. KK's three paternal aunts often visit him there. KK has his own bedroom and the home is "alcohol free."

After mother separated from father, she moved out of their shared apartment and "directly into the residence of [her] current boyfriend, Brian Watson," with whom she was engaged at the time of trial. She knew that Watson had some prior convictions, but was unaware of "what those convictions were for[.]" During these proceedings, mother and Watson moved into a three-bedroom, one-bathroom house in Flint, which KK's maternal grandmother owned. At the time of trial, JA and LM shared one bedroom in that house, KK had "his own bedroom," and mother and Watson shared a bedroom.

Father asserted that he was unaware that mother used marijuana while pregnant with KK until he "caught her" smoking in their bedroom at some point during the pregnancy. It is undisputed that KK "was born with marijuana in his system" in 2016.

At trial, mother admitted that she continued to use marijuana "at least twice a week," but denied any marijuana use while KK was in her custody. Mother also denied that she smoked marijuana in her home or her car, claiming that she only smoked it outside. She explained that she had a medical-marijuana card and used marijuana to treat her issues with depression and anxiety.

---

[3] Between the second and third day of the bench trial, the mother's trial counsel was permitted to withdraw and mother thereafter proceeded *in propria persona*.

The trial court found that KK had an established custodial environment with both father and mother and awarded them "joint legal and joint physical custody of the minor child with [father] having primary residence . . . [.]" The trial court also determined that it was in the child's best interests for father to continue to exercise parenting time on an "alternating weekly" basis and for the parties to alternate major holidays on an annual basis. This appeal followed.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

On appeal, father raises several claims of error, which we review under varying standards. "Under the Child Custody Act, MCL 722.21 *et seq.*, 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010) (*Pierron II*), citing MCL 722.28. "Whether an established custodial environment exists is a question of fact to which the great weight of the evidence standard applies." *Kubicki v Sharpe*, 306 Mich App 525, 540; 858 NW2d 57 (2014). "Under the great weight of the evidence standard, a reviewing court defers to the trial court's credibility determinations, and the trial court's factual findings should be affirmed unless the evidence clearly preponderates in the opposite direction." *Pierron II*, 486 Mich at 96. Custody decisions are discretionary rulings that this Court reviews for an abuse of discretion. *Vodvarka v Grasmeyer*, 259 Mich App 499, 507-508; 675 NW2d 847 (2003). By incorrectly choosing, interpreting, or applying the law, a trial court commits clear legal error. *Id*. at 508.

This Court also reviews for an abuse of discretion "a trial court's decision on whether to compel discovery." *Sarkar v Doe*, 318 Mich App 156, 167; 897 NW2d 207 (2016). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes," *Smith v Smith*, 278 Mich App 198, 207; 748 NW2d 258 (2008), or, "for purposes of a child custody determination, . . . when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias," *Butler v Simmons-Butler*, 308 Mich App 195, 201; 863 NW2d 677 (2014). However, "[a] decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 729; 761 NW2d 454 (2008) (quotation marks and citation omitted).

### B. MOTION TO COMPEL DISCOVERY

We first address father's argument that the trial court abused its discretion by denying his pretrial motion to compel mother to produce copies of the school report cards for her other children, JA and LM. Assuming that the requested report cards were not privileged,[4] the trial court

---

[4] Educational records—especially the records of minors, such as JA and LM—are often privileged under state or federal statutes. See, e.g., MCL 600.2165; *Connoisseur Communication of Flint, LP v Univ of Mich*, 230 Mich App 732, 734; 584 NW2d 647 (1998) (discussing "the Family Educational Rights and Privacy Act (FERPA), 20 USC § 1232g"). But because the parties have

did not abuse its discretion by denying father access to them on relevancy grounds. And even if the trial court had abused its discretion, the error was harmless.

"It is well settled that Michigan follows an open, broad discovery policy that permits liberal discovery of any matter, *not privileged*, that is *relevant* to the subject matter involved in the pending case." *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011) (quotation marks and citation omitted; emphasis added). As our Supreme Court explained in *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 667; 819 NW2d 28 (2011):

> Relevant evidence is evidence "having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401 (emphasis added). Relevance divides into two components: materiality and probative value. Material evidence relates to a fact of consequence to the action. A material fact need not be an element of a crime or cause of action or defense but it must, at least, be "in issue" in the sense that it is within the range of litigated matters in controversy. Materiality looks to the relation between the propositions that the evidence is offered to prove and the issues in the case. If the evidence is offered to help prove a proposition that is not a matter in issue, the evidence is immaterial. [Quotations marks, citations, and alterations omitted.]

"The controlling consideration in child custody disputes between parents is the best interests of the children," *Lombardo v Lombardo*, 202 Mich App 151, 159-160; 507 NW2d 788 (1993), and when considering that issue, a trial court "must consider and explicitly state its findings and conclusions with regard to each [best-interest] factor" enumerated by MCL 722.23, *Thompson v Thompson*, 261 Mich App 353, 357; 683 NW2d 250 (2004). Among others, those factors include:

> (b) The *capacity and disposition of the parties involved* to give the child love, affection, *and guidance* and to continue *the education* and raising of the child in his or her religion or creed, if any.
>
> * * *
>
> (h) The home, school, and community record of the child.
>
> * * *
>
> (l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23 (emphasis added).]

---

not briefed this issue, and failed to raise any argument concerning privilege in the trial court, we do not consider the issue on its merits. We merely note this potential issue because neither JA nor LM are parties to this action, mother appears here *in propria persona* and has not filed a brief on appeal.

Therefore, a parent's past record of assuming "responsibility" for the "educational needs" of his or her minor children is a relevant consideration in a child-custody action of *those* children. See, e.g., *Diez v Davey*, 307 Mich App 366, 391, 394; 861 NW2d 323 (2014).

The trial court ruled that the educational records of mother's other minor children, JA and LM, were not relevant. Father asserted that the report cards would "indicate deficient parenting of [KK] based upon [JA and LM]" and raises a similar argument on appeal. The trial court did not abuse its discretion by denying disclosure of the records.

The requested report cards were for the "2018/2019" school year, and therefore bore a close temporal relationship to this case. However, the custody of these children was not at issue in this case. MCL 722.23(b) provides that the trial court should consider "[t]he capacity and disposition of the parties involved to give *the child* love, affection, and guidance and to *continue the education and raising of the child* in his or her religion or creed, if any." (Emphasis added). MCL 722.23(h) provides that the trial court should consider "[t]he home, school, and community *record of the child*." (Emphasis added). In this case, the custody dispute concerned KK—not JA or LM. Additionally, at the time of trial, KK was not of school age. We find no merit in father's contention that the school records of KK's two half-siblings are probative of mother's ability to help KK succeed in school. Father insists that "[t]he report cards would be a significant barometer for [mother's] anticipated parenting of [KK]," but like the trial court, we cannot accept that logic. There are too many variables in the education equation to conclude that one child's lack of success in school has any value in predicting success or failure on the part of a far younger half-sibling.[5]

Further, the trial court denied father's motion to compel the records without prejudice, noting that it would reconsider whether or not such records were relevant if, at a later date, KK suffered from a lack of help with school from mother. We conclude that the trial court's decision fell within "the range of reasonable and principled outcomes," *Smith*, 278 Mich App at 207, and that father has not established that the result was "so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias," *Butler*, 308 Mich App at 201. Therefore, the trial court did not err by holding that the requested report cards were not relevant to this action.

Nonetheless, even if we were to conclude that the trial court's ruling was erroneous, reversal would be unwarranted because the alleged error was harmless.

MCR 2.613(A) provides:

---

[5] This Court afforded father's counsel an opportunity to provide supplemental authority, if any existed, to support his contention that the educational records of children not issue of the parties' marriage/relationship were relevant to factors b and/or h of Michigan's Child Custody Act, MCL 722.23. Having reviewed counsel's supplemental filing, we are not persuaded by the arguments made or authority cited.

An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

"A trial court's error is harmless if, based on review of the entire record, it is more probable than not that the error was not outcome determinative[.]" *Nahshal v Fremont Ins Co*, 324 Mich App 696, 717; 922 NW2d 662 (2018).

To the extent that the requested report cards would have been admissible, they would have been cumulative to other testimony. Mother admitted that JA had "flunked the ninth grade" while JA lived with her and that JA has had "disciplinary problems in school[.]" Mother also agreed that LM had a somewhat lackluster academic record, indicating that he merely "does passing work in school[.]" Although no evidence was introduced at trial to establish the attendance record of LM and JA during the 2018 and 2019 school year, we cannot conclude that it is more probable than not that the absence of such evidence was outcome-determinative.

### C. ESTABLISHED CUSTODIAL ENVIRONMENT

Father also argues that the trial court clearly erred by finding that KK had an established custodial environment with both parents. Specifically, father contends that, even if KK had an established custodial environment with both parents at one time, that environment was no longer "established" at the time of trial "as a result of the upcoming custody trial and the repeated changes which [mother] agreed to or unilaterally imposed[.]" The trial court's disputed finding is not contrary to the great weight of the evidence.

We review under the "great weight of the evidence" standard a trial court's factual determination regarding the existence of an established custodial environment. *Kubicki*, 306 Mich App at 540. "If the trial court finds that an established custodial environment exists, then the trial court can change custody only if the party bearing the burden presents clear and convincing evidence that the change serves the best interests of the child." *Foskett v Foskett*, 247 Mich App 1, 6; 634 NW2d 363 (2001). On the other hand, "if the court finds that no established custodial environment exists, then the court may change custody if the party bearing the burden proves by a preponderance of the evidence that the change serves the child's best interests." *Id.* at 6-7.

Under MCL 722.27(1)(c), a custodial environment of a child is established when

*over an appreciable time* the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. [Emphasis added.]

"An established custodial environment is one of *significant duration*, both physical and psychological, in which the relationship between the custodian and child is marked by security, stability, and permanence." *Butler*, 308 Mich App at 202-203 (emphasis added).

It is true that, as father argues, "[r]epeated changes in physical custody and the uncertainty resulting from an upcoming custody trial can destroy an established custodial environment." *Rains v Rains*, 301 Mich App 313, 333; 836 NW2d 709 (2013). Here, numerous changes in KK's physical custody occurred between the time of KK's birth in 2016 and the trial court's contested decision on August 16, 2021. The evidence at trial established that, until the parties separated in 2018, KK primarily lived with both of his parents. After their separation, he resided with either mother or father and the paternal grandparents—on an alternating basis—though father was hospitalized for several days in November 2018. Sometime around March 22, 2019, mother began refusing to permit father to have any contact with KK, after father confronted mother about the child's positive drug-test results. That disruption in KK's physical custody continued until after father initiated this action on April 12, 2019. As a result of the trial court's intervention, KK began an alternating weekly schedule with the parties.

The COVID-19 pandemic interrupted that schedule, as did the bench trial. From March 2020 to June 2020, KK lived exclusively with father at the paternal grandparents' home, though he continued to have contact with mother "by FaceTime" during that interim. Thereafter, the parents resumed sharing custody of KK on an alternating weekly basis, and there is no evidence of any further interruption in that physical custody arrangement before the trial court ruled. When the trial court entered its August 16, 2021 order, KK's alternating weekly physical custody arrangement had been back in place for—at most—about 13 or 14 months.

MCL 722.27(1)(c) instructs a trial judge to determine whether an established custodial environment exists by focusing on whether "*over an appreciable time* the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." (Emphasis added). Although the statutory language is imprecise, a period of 13 or 14 months constituted an "appreciable time" for purposes of finding an established custodial environment under MCL 722.27(1)(c), particularly with regard to a three-year-old. See, e.g., *In re AP*, 283 Mich App 574, 604-605; 770 NW2d 403 (2009) (finding that a period of approximately four months was sufficient to establish a custodial environment with one parent). Father's own time line of events indicates that KK had a consistent physical custody arrangement with both parents spanning the 13 or 14 months immediately before the trial court's disputed ruling. Therefore, we are not persuaded that the evidence clearly preponderated against the trial court's finding that KK had an established custodial environment with both parents.[6]

D. BEST-INTEREST FACTORS AND ULTIMATE CUSTODY DETERMINATION

Father argues that the trial court abused its discretion or relied on findings against the great weight of the evidence by finding that several of the best-interest factors equally favored both parties, and by determining that, on the whole, it was in KK's best interests for the parties to share joint legal and physical custody of KK, "with equal alternate week parenting time." We disagree.

---

[6] For that same reason, we reject father's argument that the trial court erred by applying the "clear and convincing evidence" standard in this custody dispute. See *Foskett*, 247 Mich App at 6 (applying the "clear and convincing evidence" standard "when there is an established custodial environment with both parents.").

"The controlling consideration in child custody disputes between parents is the best interests of the children." *Lombardo*, 202 Mich App at 159-160; see also MCL 722.25(1) ("If a child custody dispute is between the parents, . . . the best interests of the child control."). When adjudicating a custody dispute, a trial court "must consider and explicitly state its findings and conclusions with regard to each" best-interest factor enumerated by MCL 722.23. *Thompson*, 261 Mich App at 357. "A court need not give equal weight to all the factors, but may consider the relative weight of the factors as appropriate to the circumstances." *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). By entering a custody order, the trial court implicitly indicates that it has properly considered the best-interest factors, engaged in "profound deliberation" about its discretionary custody ruling, and is satisfied that the custody order is in the child's best interests. *Harvey v Harvey*, 470 Mich 186, 192-193; 680 NW2d 835 (2004). "It is presumed to be in the best interests of a child for the child to have a strong relationship with both . . . parents." MCL 722.27a(1).

Father first argues that the evidence clearly preponderated against the trial court's finding that MCL 722.23(c) ("capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care . . . , and other material needs") equally favored both parties. We conclude that the trial court's disputed finding is not against the great weight of the evidence.

The trial court's analysis of MCL 722.23(c) focused primarily on the parties' respective financial situations and whether they would be able to help support KK financially, which was altogether appropriate. See, e.g., *Fletcher v Fletcher*, 229 Mich App 19, 27-28; 581 NW2d 11 (1998) (affirming a trial court's factual findings under MCL 722.23(c), which focused on the parties' "earning capacity" and their "judgment in financial matters"). Although mother testified that she was unemployed as of the first day of trial, on the final day of trial, during closing arguments, father's attorney admitted that mother was then employed in a position that permitted her to "work[] from home." Meanwhile, the evidence indicated that father continued to receive financial assistance for himself and KK—evidently in the form of free room and board—in exchange for various services he performed for the paternal grandparents. There was also evidence that father expected to graduate from college shortly after trial and intended to start his own "medical consulting" business. On the other hand, father admitted that he had less than $1,000 in his bank account, did not have his own residence, and did not own a vehicle. We are not persuaded that the evidence clearly preponderated against the trial court's finding that the parties were equally situated with regard to their capacity and disposition to provide for KK under MCL 722.23(c).

Father also argues that the evidence clearly preponderated against the trial court's finding that the parties were equal with regard to MCL 722.23(j) ("The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents."). In particular, father argues that, in light of mother's pretrial conduct—i.e., her admitted refusal to permit father to have any contact with KK for approximately three months in 2019, and her refusal to inform father about where she and KK were residing during that same timeframe—the trial court should have found that MCL 722.23(j) favored father. We again conclude that the trial court's finding regarding MCL 722.23(j) is not against the great weight of the evidence.

Father's argument concerning this best-interest factor focuses exclusively on mother's conduct during a three-month period that ended in June 2019, more than two years before the trial court entered the August 16, 2021 order at issue. In other words, father ignores the mother's conduct during the timeframe of greatest importance to this case, the months immediately preceding the trial court's disputed custody ruling. See, e.g., *Fletcher v Fletcher*, 447 Mich 871, 889; 526 NW2d 889 (1994) (recognizing that the consideration of "up-to-date information" is essential to a proper child-custody determination); *Demski v Petlick*, 309 Mich App 404, 450; 873 NW2d 596 (2015) (holding that evidence of a party's "past marijuana use" was largely immaterial, for purposes of MCL 722.23(f), in the absence of evidence demonstrating that the party "presently used marijuana or planned on doing so in the future"). Father cites no evidence indicating that after June 2019, mother ever withheld KK from father or refused to communicate with father regarding KK. On the contrary, the record evidence indicates that from June 2019 until the trial court ruled in August 2021, mother complied with the trial court's temporary custody orders, voluntarily afforded father additional time with KK on numerous occasions, and promptly communicated with father after the child was injured while in mother's care. Indeed, at trial, father admitted that, although he and mother had experienced "difficulties in communicating" about KK at times in the past, he believed that they would be able to "move past that" in the future. Further, the trial court explicitly considered mother's prior actions of withholding the child from father for three months in its parenting-time analysis, under MCL 722.27a(7)(f), and concluded that "[t]he parties appear to have realized the detriment to the minor child this caused and have since followed the court's orders for parenting time exchanges." Therefore, we perceive no great weight error in the trial court's finding that MCL 722.23(j) favored the parties equally.

Finally, father argues that the trial court abused its discretion by granting the parties "joint legal and joint physical custody, with equal alternate week parenting time." Specifically, father argues that the evidence clearly preponderated against the factual finding that supported the trial court's custody decision—its finding that such a custody arrangement was in KK's best interests. We are not persuaded.

It is true that the trial court found that 4 of the 12 best-interest factors favored father—in particular, factors (d) (length of time in a stable, satisfactory environment and the desirability of maintaining continuity), (e) (permanence, as a family unit, of the existing or proposed custodial home or homes), (f) (moral fitness of the parties), and (l) (the so-called "catch-all" factor)—while it found that the remaining eight factors either favored the parties equally or were inapplicable. It is also true that there was evidence that mother had made poor decisions in the past about exposing KK to marijuana, both before and after his birth.

But the best-interest inquiry is not an exercise in mathematics, *Pierron v Pierron*, 282 Mich App 222, 261; 765 NW2d 345 (2009) (*Pierron I*), and the best-interest factors should not be applied as some sort of "rigid . . . mathematical formulation," *McCain v McCain*, 229 Mich App 123, 130; 580 NW2d 485 (1998) (quotation marks and citation omitted). Put differently, "[t]he process of reviewing these wrenching decisions is not, at bottom, a problem of quantitative analysis; our duty is finally to analyze the quality of the evidence adduced to determine whether a party's burden of proof is met." *Heid v Aaasulewski (After Remand)*, 209 Mich App 587, 594; 532 NW2d 205 (1995). "When all else is equal, the overwhelmingly predominant factor is, as always, the welfare of the child, and, in the end, we are duty-bound to examine all the criteria in the ultimate light of the child's best interests." *Pierron I*, 282 Mich App at 261 (quotation marks, citations,

and alteration omitted). Moreover, this Court's review of the trial court's best-interest findings is necessarily deferential. As our Supreme Court explained in *Fletcher*, 447 Mich at 889-890:

> [T]rial courts are in a superior position to make accurate decisions concerning the custody arrangement that will be in a child's best interests. Although not infallible, trial courts are more experienced and better situated to weigh evidence and assess credibility. Trial courts not only hear testimony and observe witnesses, but also may elicit testimony, interview children, and invoke other judicial resources to assure a thorough and careful evaluation of the child's best interests.

Notably, in light of the trial court's finding that KK had an established custodial environment with both parties, father had the burden, as the party requesting a change in that environment, of demonstrating by clear and convincing evidence that the requested change was in the child's best interests. See *Foskett*, 247 Mich App at 6. The clear and convincing evidence standard is "the most demanding standard applied in civil cases . . . ." *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995). Evidence is clear and convincing if it

> produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*Id*. (quotation marks, citation, and alterations omitted).]

"Evidence may be uncontroverted, and yet not be 'clear and convincing.' " *Id*. (quotation marks and citation omitted). "Conversely, evidence may be 'clear and convincing' despite the fact that it has been contradicted." *Id*. (quotation marks and citation omitted). Although "a finding of equality or near equality on the factors set out in [MCL 722.23] will not *necessarily* prevent a party from satisfying the burden of proof by clear and convincing evidence," *Heid*, 209 Mich App at 593 (emphasis added), "where an evidentiary standoff exists, a party cannot meet the burden of proof by clear and convincing evidence," *id*. at 594.

In light of the deferential standard of review that applies here and the presumption, under MCL 722.27a(1), that it is in KK's best interests "to have a strong relationship with both . . . parents," we cannot conclude that the trial court abused its discretion or relied on findings against the great weight of the evidence by ruling as it did. On the contrary, although we tend to agree with father—and the trial court—that the record evidence militated in favor of father's position somewhat (i.e., that more best-interest factors favored him), it does *not* follow that he carried his burden of producing evidence so clear, direct and weighty, and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, that it was in KK's best interests to alter the established custodial environment by awarding father sole legal and physical custody. As in *Heid*, 209 Mich App at 596, the trial court did not abuse its discretion by refusing "to subject [the minor child] to any further disruption in his young life."

Affirmed.

/s/ Anica Letica
/s/ James Robert Redford
/s/ Michelle M. Rick